# UNITED STATES v. UNITED STATES FIDELITY & GUARANTY COMPANY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 125.   Argued January 15, 1915.—Decided February 23, 1915.

Under the terms of the contract involved in this case for a completed building on which partial payments were to be made as work progressed, but which was destroyed by fire during construction and never rebuilt by the contractor who had received several payments on account and who accepted notice of default and abandoned the contract, *held* that:

Where the Government relets a contract with substantial differences, the liability of the surety is not released from all obligation nor is his liability measured by the difference between the two contracts, but his liability is measured by the actual loss sustained by the Government, in this case represented by the partial payments made as work progressed and for which it received nothing in return.

The liability of the surety became fixed on occurrence of default and was not released by failure of the Government to have the same kind of a building erected in place of the one not delivered by the contractor.

The contractor's right under the contract to retain partial payments was conditioned on his subsequent fulfilment of the contract and when he wholly defaulted and gave nothing in return, he was obligated to repay the amounts received.

Under the contract in this case, the Government, while authorized to complete the work at the expense of the contractor, was not confined to that remedy, but could recover from the contractor or the surety the actual damages sustained.

The rule that a party suffering loss from breach of contract must do what a reasonable man would do to mitigate the loss does not apply where, as in this case, a fixed loss has been sustained that cannot be mitigated.

Under Rev. Stat., §§ 649, 700, and 1011 as amended by act of February 18, 1875, findings of fact have the same effect as the verdict of a jury, and this court does not revise them but merely determines whether they support the judgment.

Delay on the part of the Government in pressing its claim against a contractor who has accepted partial payments, knowing that he was not entitled thereto, does not amount to a waiver of interest.

An exception furnishes no basis for reversal upon any ground other than the one specifically called to the attention of the trial court.

The weight of authority in England is adverse to the recovery of interest from the surety in addition to the penalty of the bond, but that rule has not invariably been followed in this country.

A surety, if answerable at all for interest beyond the amount of the penalty of the bond, can only be held for such interest as accrues from unjustly withholding payment after notice of default of the principal. *United States* v. *Hills,* 4 Cliff. 618, approved.

194 Fed. Rep. 611, reversed.

THIS action was brought by the United States in the Circuit Court for the Southern District of California against Augustus W. Boggs and the United States Fidelity & Guaranty Company of Baltimore, Maryland (which may be called, for convenience, the "Guaranty Company"), to recover damages for the failure of Boggs to perform his contract to construct for plaintiff a stone

mess-hall and kitchen at the Rice Station Indian School in Arizona, for the performance of which the Guaranty Company was his surety upon a bond in the penal sum of $6,500.  Upon plaintiff's complaint and the answer of the Guaranty Company (Boggs having failed to appear and his default having been entered), the case came on for trial before the Circuit Court, trial by jury being formally waived under § 649, Rev. Stat.  Elaborate findings of fact were made, the substance of which is as follows: By the contract, which was in writing and dated February 23, 1905, Boggs agreed to furnish all materials and perform all work required for the construction and completion of the building in strict and full accordance with the requirements of the plans and specifications which were annexed; covenanting that the entire work should be completed and turned over to the United States on or before September 1; and that (Article 4) if he failed to complete the work in accordance with the agreement within that time "the said party of the first part [the United States] may withhold all payments for work in place until final completion and acceptance of same, and is authorized and empowered, after eight days' notice thereof, in writing, to the party of the second part, and the said party of the second part having failed to take such action within the said eight days as will, in the judgment of the party of the first part, remedy the default for which said notice was given, to take possession of the said work in whole or in part and of all machinery and tools employed thereon and all materials belonging to the said party of the second part delivered on the site, and, at the expense of said party of the second part, to complete or have completed the said work, and to supply or have supplied the labor, materials, and tools of whatever character necessary to be purchased or supplied by reason of the default of the said party of the second part; in which event the said party of the second part and

his sureties of the bond to be given for the faithful performance of this agreement shall be further liable for any damages incurred through such default and any and all other breaches of this contract." By Article 9 the United States agreed to pay to the contractor on the presentation of proper receipts or vouchers the sum of $12,709, "in consideration of the herein recited covenants and agreements made by the party of the second part, as follows: Eighty (80) per centum of the value of the work executed and actually in place to the satisfaction of the party of the first part at the expiration of each thirty (30) days during the progress of the work, the amount of each payment to be computed upon the actual amount of labor and materials expended during the said period of thirty (30) days for which partial payment is to be made, (the said value to be ascertained by the party of the first part); and the balance thereof will be retained until the completion of the entire work, and the approval and acceptance of the same by the party of the first part, which amount shall be forfeited by the said party of the second part in the event of the non-fulfillment of this contract; it being expressly covenanted and agreed that said forfeiture shall not relieve the party of the second part from liability to the party of the first part for any and all damages sustained by reason of any breach of this contract." Attached to the contract as a part of the specifications were certain "general conditions" which (*inter alia*) required the contractor to be responsible for all damages to the building, whether from fire or other causes, during the prosecution of the work and until its acceptance, and declared that partial payments were not to be considered as an acceptance of any work or material. On or about April 12, Boggs commenced operations and furnished certain materials and did certain work, but he did not at any time complete the building in accordance with the contract, and on the contrary wilfully, intentionally, and

fraudulently disregarded the terms of the contract from the beginning of his operations under it. On June 10 plaintiff paid him $4,356.24 on account, and on July 21 the further sum of $3,539.16, both payments being "pursuant to the terms of said contract," and aggregating $7,895.40, no part of which has been repaid to plaintiff. He not only failed to complete the work on or before the first of September, but failed after that date to take such action as would remedy his default. On or about October 27 plaintiff rejected the work and materials and the building as offered for acceptance by Boggs. On November 4, while the structure was still in his possession, it was completely destroyed by fire. Thereafter he did not in accordance with the provisions of the contract commence the construction or reconstruction of the building, and anything he did thereafter was outside of the contract and without plaintiff's consent. On or about December 28, by reason of his failure and refusal to perform the terms of the contract, or to complete and turn over the building as therein required, or to remedy his default, plaintiff took possession of the site, and notified Boggs and his representatives to vacate the premises and leave the Indian Reservation, which they immediately did. At the same time plaintiff seized and confiscated certain building materials, tools, and implements, of the value of $2,418.58, then upon the premises and belonging to Boggs. It is further found that Boggs wilfully, intentionally, and fraudulently failed, neglected, and refused to erect a structure in accordance with the plans and specifications that were a part of his contract, although plaintiff performed all conditions and obligations on its part; and there are specific findings that plaintiff did not change or abrogate the terms of the contract in any particular, nor extend the time of performance, nor consent to the failure and delay on the part of Boggs. In December, 1906, the United States advertised for the construc-

tion of a new mess-hall and kitchen upon the same site, and in January, 1907, entered into a written contract with one Owen for the construction of such building for the sum of $16,600, in lieu of the building that had been agreed to be built by Boggs; but the contract with Owen was different in substantial respects from that made between the plaintiff and Boggs, and the building actually erected by Owen was likewise different; $1,200 of the contract price agreed to be paid and actually paid to him had reference to work wholly outside of the work provided for in the Boggs contract, and $500 of the contract price agreed to be paid and actually paid to Owen was for work and materials in excess of what was included in the Boggs contract. Moreover, the cost of labor and building supplies had materially increased between the time of Boggs' default and the time of making the new agreement. Hence, the trial court found that a comparison between the two contracts furnished no basis for estimating plaintiff's damages.

Upon these findings judgment was rendered in favor of the United States for the amount of the two sums advanced to Boggs during the progress of the work ($7,895.40), from which, however, $2,418.58 was deducted as a set-off and counter-claim in favor of defendants for the value of the materials confiscated. Interest was allowed to plaintiff at 7% upon the amount of the "progress payments" from September 1, 1905, until the date of judgment, and interest at the same rate was allowed to defendants upon the amount of the offset from December 28, 1905, the difference, which plaintiff was held entitled to recover, being $7,403.09; but the recovery against the Guaranty Company was limited to $6,500, besides costs.

Upon cross-writs of error this judgment was reviewed by the Circuit Court of Appeals, with the result that it was reversed for error assigned by the Guaranty Company, and the cause remanded with directions to enter

judgment in its favor on the findings.   194 Fed. Rep. 611.
The present writ of error was then sued out.

*The Solicitor General,* with whom *Mr. W. C. Herron*
was on the brief, for the United States:

The surety was not released by the changes in the relet
contract, but was liable to the extent, at least, of the
progress payments.  *United States* v. *Axman,* 234 U. S.
36; *S. C., American Bonding Co.* v. *United States,* 167
Fed. Rep. 910, distinguished.  As under the contract in
that case the Government was limited in its recovery to
such sum as was expended by it in completing the con-
tract, and the decision went against it because of its fail-
ure to observe an express stipulation relating to the de-
termination of damages.

In this case the contract expressly provided that both
the contractor and the surety should be liable for any
damages incurred through the default and any other
breaches of the contract.

The doctrine that a surety is released by material
changes made without his consent has no application to
changes made in a relet contract after a default on the
original.

Because of insolvency of contractor, the Government
waives assignment of error relating to refusal of lower
court to allow damages on amounts of excess cost in relet
contract.

The Government was damaged to full amount of the
progress payments, which it is entitled to recover.

The other defenses urged by the surety in the court
below are without merit.  They were not specially pleaded,
and defense of release must be specially pleaded by the
surety, and the burden of proof is upon him to establish
such defense.  *Randle* v. *Barnard,* 99 Fed. Rep. 348, 350;
*Howard County* v. *Baker,* 119 Missouri, 397, 407; *Sachs* v.
*Am. Surety Co.,* 72 N. Y. App. Div. 60, 66.

The same rule obtains in California, where the case at bar was tried. Code Civ. Proc., 1907, § 437; *Piercy* v. *Sabin*, 10 California, 22, 27; *Bull* v. *Coe*, 77 California, 54, 62.

It is not anywhere pleaded or proved that the surety was damaged in any way.

While this was immaterial under the old law relating to the voluntary surety, the rule of *strictissimi juris* has been relaxed as to professional bonding companies. *Atlantic Trust Co.* v. *Laurinburg*, 163 Fed. Rep. 690, 695; *Hill* v. *Am. Surety Co.*, 200 U. S. 197, 202; *U. S. Fidelity Co.* v. *United States*, 178 Fed. Rep. 692.

None of these defenses of the surety has any merit.

The progress payments are governed by Article 9 of the contract, and the evidence shows a substantial compliance with the contract.

The claim of the surety that it was released because of the Government's failure properly to inspect the work during its progress is also without merit. *United States* v. *Kirkpatrick*, 9 Wheat. 720, 736; *Dox* v. *Postmaster General*, 1 Pet. 318, 325.

The United States is entitled to interest on the penalty of the bond from September 1, 1905, the date of default, or at least from January 16, 1906, when the surety was notified of such default. *Probate Judge* v. *Heydock*, 8 N. H. 491, 494; *Perit* v. *Wallis*, 2 Dall. 252; *United States* v. *Quinn*, 122 Fed. Rep. 65.

*Mr. J. Kemp Bartlett* for defendants in error:

The improper payment by the United States to the contractor released the surety. *Fidelity Co.* v. *Agnew*, 152 Fed. Rep. 955; *Shelton* v. *Am. Surety Co.*, 131 Fed. Rep. 210; *Shelton* v. *Am. Surety Co.*, 127 Fed. Rep. 736; *National Surety Co.* v. *Long*, 125 Fed. Rep. 887; *Commissioners* v. *Branham*, 57 Fed. Rep. 179; *Glenn County* v. *Jones*, 146 California, 518; *Kiessig* v. *Allspaugh*, 91

California, 231; *Bragg* v. *Shain*, 49 California, 131; *Queal* v. *Stradley*, 90 N. W. Rep. 588; *Electric Appliance Co.* v. *U. S. Fidelity Co.*, 85 N. W. Rep. 648; *Backus* v. *Archer*, 67 N. W. Rep. 912; *St. Mary's College* v. *Meagher*, 11 S. W. Rep. 618; *First Nat. Bk.* v. *Fidelity Co.*, 40 So. Rep. 415; *Gato* v. *Warrington*, 19 So. Rep. 883.

Plaintiff in error is concluded by its payment to the contractor by the certificates authorizing the same, and by its permitting the completion of the building. 16 Cyc. 721–805; *United States* v. *Hurley*, 182 Fed. Rep. 776; *Quinn* v. *New York*, 45 N. Y. Supp. 7; *Katz* v. *Bedford*, 77 California, 319; *Toppan* v. *Railroad Co.*, 24 Fed. Cas. 56, 59, Case No. 14099.

Disregard of the provisions relating to the time of payment releases the surety. *Commissioners* v. *Branham*, 57 Fed. Rep. 181; *Bank* v. *Fidelity Co.*, 40 So. Rep. 418; *Shelton* v. *Am. Surety Co.*, 131 Fed. Rep. 210; *Coughran* v. *Bigelow*, 164 U. S. 301.

Requiring and permitting the contractor to retain possession and reconstruct the building after rejection constituted a departure from the contract, abrogated the same, waived the contractor's previous breaches, extended his time for performance, contributed to loss by fire, surrendered a valuable security, enlarged the surety's risk and discharged the bond. *United States* v. *De Visser*, 10 Fed. Rep. 642, 657; *Earnshaw* v. *Boyer*, 60 Fed. Rep. 528; *United States* v. *Gleason*, 175 U. S. 588; *Mundy* v. *Stevens*, 61 Fed. Rep. 77, 83; *Roberts* v. *Donovan*, 70 California, 108; *Aetna Ins. Co.* v. *Fowler*, 66 N. W. Rep. 470.

The Government prevented the contractor, without notice and without cause, from completing the work; and the bond was thereby discharged. *Mundy* v. *Stevens*, 61 Fed. Rep. 77, 82; *Fidelity Co.* v. *United States*, 137 Fed. Rep. 886; *Clark* v. *Dalziel*, 3 Cal. App. 121; *Clark* v. *United States*, 6 Wall. 543; *United States* v. *Smith*, 94 U. S. 214.

The making of a new and materially different contract after the lapse of more than a year from the date of the ejection of Boggs, the original contractor, from the reservation, with changed conditions in the building market and for a substantially different building, to be constructed according to plans and specifications differing in more than two hundred respects from the plans and specifications under the Boggs contract, furnishes no basis of estimating the damages of the plaintiff in error. *United States* v. *Axman*, 234 U. S. 36; 3 Page on Contracts, § 1580; *Lonergan* v. *Waldo*, 179 Massachusetts, 135; *United States* v. *Freel*, 92 Fed. Rep. 299; *S. C.*, 99 Fed. Rep. 237; *S. C.*, 186 U. S. 309; *Alcatraz Ass'n* v. *Fidelity Co.*, 3 Cal. App. 338.

As no measure of damage is shown, and none can be shown, no recovery is possible. *United States* v. *Axman*, 234 U. S. 36; *Am. Surety Co.* v. *Woods*, 105 Fed. Rep. 741; *Am. Bonding Co.* v. *Gibson Co.*, 127 Fed. Rep. 671; *United States* v. *Freel*, 186 U. S. 309; *Miller* v. *Stewart*, 9 Wheat. 680; *Reese* v. *United States*, 9 Wall. 13; *United States* v. *Stone, Gravel Co.*, 177 Fed. Rep. 321; *Chesapeake Transit Co.* v. *Walker*, 158 Fed. Rep. 850; *United States* v. *Grosjean*, 184 Fed. Rep. 593.

The retention by the Government of the contractor's materials for more than a year, and surrender of them to the new contractor at less than half price, released the surety. *Montgomery* v. *Sayre*, 100 California, 182, 185.

The Government's failure to notify surety discharged the bond. *United States* v. *Freel*, 186 U. S. 309; *United States* v. *McIntyre*, 111 Fed. Rep. 590, 597; *Mundy* v. *Stevens*, 61 Fed. Rep. 77, 85; *Tuohy* v. *Woods*, 122 California, 665, 667; *Alcatraz Ass'n* v. *U. S. Fidelity Co.*, 3 Cal. App. 338, 342; *Moses* v. *United States*, 116 Fed. Rep. 526, 529; *United States* v. *Smith*, 94 U. S. 214; *Clark* v. *United States*, 6 Wall. 543; *Ætna Ins. Co.* v. *Fowler*, 66 N. W. Rep. 470; *Roberts* v. *Donovan*, 70 California, 108.

The contractor's offer to perform released the surety under the California Civil Code. *Daneri* v. *Grazzola*, 139 California, 416; Cal. Civil Code, § 2839.

The Government's claim for interest is without merit. *Stephens* v. *Bridge Co.*, 139 Fed. Rep. 248; *Krasilnikoff* v. *Dundon*, 8 Cal. App. 406, 411, 412; Cal. Civil Code, § 1504; *Wadleigh* v. *Phelps*, 149 California, 627, 642; *Ferrea* v. *Tubbs*, 125 California, 587, 690; *United States* v. *Quinn*, 122 Fed. Rep. 65; *United States* v. *Sanborn*, 135 U. S. 271; *Redfield* v. *Iron Co.*, 110 U. S. 174; *Redfield* v. *Bartels*, 139 U. S. 694.

The sureties' defenses were well pleaded.

MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.

The Circuit Court of Appeals held, in substance, that because after the default of Boggs in the performance of his contract the Government waited more than a year before entering into a new contract, during which time there was a material change in the cost of labor and building supplies, and because the new contract then made between the Government and Owen was different in substantial particulars from that upon which the Guaranty Company became surety, the second contract furnished no proper basis for estimating the damages sustained by plaintiff by reason of the breach of the first, and therefore the Guaranty Company was wholly released from liability.

For present purposes we assume the entire correctness of the court's view that because of the substantial differences between the work that was the subject of the Boggs contract and the work that was afterwards let to Owen, the latter contract furnished no proper basis for ascertaining the damages accruing to the Government by reason of the default of Boggs. The court rested its decision

to this effect upon the language of Article 4 of the Boggs agreement and its own previous decision in *American Bonding Co.* v. *United States,* 167 Fed. Rep. 910, since affirmed by this court in *United States* v. *Axman,* 234 U. S. 36.

But the question whether, by the letting of the Owen contract, or by whatever else was done or omitted by the Government about rebuilding after the default of Boggs, the responsibility of his surety was wholly discharged, is a very different question, not concluded by the decision in the case cited. There the Government, upon Axman's default, "annulled" his contract pursuant to its fourth paragraph; that is, undertook to complete it in his stead and charge him with the excess cost. As appears from the reports of the case (167 Fed. Rep. 915; 234 U. S. 42, 43), it was "not a suit to recover generally whatever damages the United States would have sustained had Axman abandoned his contract, but a suit for damages under the express stipulations of the contract;" that is to say, under its fourth paragraph. No other question was considered or decided.

In the present case, Boggs wholly failed to construct the building called for by his contract, either within the time prescribed or at any time. His work and materials, and the building as he offered it for acceptance, were rejected by the Government, and thereafter, while remaining in his possession, the structure was completely destroyed by fire. He then took no steps to construct or reconstruct the building in accordance with the contract, but continued to wilfully disregard its obligations, so that after waiting for an additional month and more the Government took possession of the site and required him and his representatives to vacate the premises, which they immediately did. His default was complete, and upon the findings it cannot be deemed to have resulted from anything done or omitted by the Government. Nor did the Government receive

anything of value from him or as a result of his work,
except the building materials, tools, and implements that
were confiscated and for which allowance was made in the
judgment. Upon this state of facts, the Guaranty Com-
pany's liability clearly became fixed upon the occurrence
of the default; and it was not released by the failure of the
Government to have the same work completed in accord-
ance with Article 4, unless by the fair meaning of the
agreement the Government was obliged to rebuild or at
least was excluded from recovering damages upon any
other basis than a completion of the building, as permitted
by that Article. For it is plain, we think, that the making
of the new contract cannot be regarded as an alteration of
the Boggs contract to the exoneration of his surety. The
very fact that the differences were so material as to ex-
clude the Owen contract from consideration as a thing
done by the Government under the Boggs contract, leaves
it without any relation to the rights of the present parties.
Their rights and liabilities between themselves, being
already fixed by the complete breach of the Boggs agree-
ment, were not to be affected by any subsequent and
independent transaction between the Government and
third parties.

Is the Government, then, remediless against the Guar-
anty Company for the default of its principal? The con-
tract was entire and indivisible; a completed building was
the thing bargained for; the partial payments were not
to be considered as an acceptance of any work or material;
they were to be "eighty per centum of the value of the
work executed, . . . the amount of each payment
to be computed upon the actual amount of labor and ma-
terials expended"; the balance was to be "retained until
the completion of the entire work," and forfeited in the
event of non-fulfillment of the contract, but such forfeiture
was not to relieve the contractor from liability for any and
all damages by reason of any breach of the contract. Aside

from the particular effect of Article 4, which will be considered presently, the true intent and meaning are plain: the "progress payments" were not to be treated as payments for parts of a building, but as partial payments advanced on account of a building to be completed thereafter as agreed. The contractor's right to retain them was conditioned upon his subsequent fulfillment of the contract. And when he wholly defaulted, and in effect abandoned the contract, the most direct and immediate loss sustained by the Government was the moneys it had paid him on account, and for which he had given nothing in return. Conceding that there was not, technically, a failure of consideration, because his promise and not its performance was in strictness the consideration (*United & Globe Rubber Mfg. Co.* v. *Conard,* 80 N. J. L. 286, 293), still the substance of the matter is the same, so far as concerns the measure of the detriment to the promisee.

The general rule, that a contract for the complete construction of a building for an entire price, payable in instalments as the work progresses, is an entire contract, and that a wilful refusal by the contractor to complete the building entitles the owner to a return of the instalments paid, has been declared by the state courts in a number of cases. *School Trustees* v. *Bennett,* 27 N. J. L. 513, 517; 72 Am. Dec. 373, 374; *Tompkins* v. *Dudley,* 25 N. Y. 272; 82 Am. Dec. 349; *Bartlett* v. *Bisbey,* 27 Tex. Civ. App. 405, 408; 66 S. W. Rep. 70; and cases cited. This court, in a case that has been often cited and followed, where a government contractor, without fault of his own, was prevented from performing his contract owing to the abandonment of the project, held that he was entitled to recover from the United States what he had expended towards performance (less the value of his materials on hand), although he failed to establish that there would have been any profits. *United States* v. *Behan,* 110 U. S.

338, 344. And see *Holt* v. *United Security Life Ins. Co.*, 76 N. J. L. 585, 597.

We do not think Article 4 can properly be so construed as to restrict the Government to the remedy there indicated in the event of default by the contractor, or to exclude recovery of the actual damages directly attributable to such default if, in the reasonable exercise of, its rights, the Government determines not to complete the building. In the language of the Article, the Government is "authorized and empowered"—not "obliged"—to complete the work at the expense of the contractor; *"in which event"* the contractor and his sureties shall be *"further* liable for *any* damages incurred through such default and *any and all other breaches* of this contract." The phraseology indicates a purpose to give to the Government a right additional to those it would otherwise have; the stipulation is made for its benefit, and, being optional in form, cannot be construed into a covenant in favor of the defaulting contractor or his surety. Even in case the option is exercised, the language quoted leaves contractor and surety liable for other damages; *a fortiori,* the intent is to preserve their liability in case the option is not exercised.

We have not overlooked the familiar rule that a party suffering loss from breach of contract ought to do what a reasonable man would to mitigate his loss. *Wicker* v. *Hoppock,* 6 Wall. 94, 99; *Warren* v. *Stoddart,* 105 U. S. 224, 229. But there is nothing in the facts as found to call for the application of this rule; for there is nothing to show that the Government acted unreasonably in not exercising its option to rebuild under Article 4. Nor does it appear that the loss would probably have been lessened by rebuilding; the "progress payments" would of course have remained as a part of the loss, in addition to the cost of new construction.

In our opinion, therefore, the Court of Appeals erred

in holding that, because of the failure of the Government to complete Boggs' agreement in accordance with Article 4, the surety was released.

The Guaranty Company insists, however, that there are other grounds upon which the decision in its favor may be sustained: that the representatives of the Government were grossly negligent in making advance payments to Boggs, in view of the supposed fact that the building contract was then being openly and flagrantly violated, and the defects in the work were conspicuously evident; that the Government is concluded by the fact of making these payments, or, if not, then by its alleged disregard of the provisions of the contract relating to the time of making them; and that in these and other respects the Government departed from the contract, waived breaches by the contractor, extended his time for performance, surrendered valuable security, and enlarged the surety's risk, thereby releasing it from liability. Assuming these defences were properly pleaded, we still need spend no time upon them, since the argument made here to support them is based, not upon the findings, but upon a general review of the evidence and a series of inferences drawn from it that are inconsistent with the facts as found by the trial court. The findings have the same effect as the verdict of a jury, and this court does not revise them, but merely determines whether they support the judgment. Rev. Stat., §§ 649, 700, 1011 (amended by Act of February 18, 1875, c. 80, § 1, 18 Stat. 318); *Norris* v. *Jackson,* 9 Wall. 125, 128; *St. Louis* v. *Ferry Co.,* 11 Wall. 423, 428; *Dickinson* v. *Planters' Bank,* 16 Wall. 250, 257; *Insurance Co.* v. *Folsom,* 18 Wall. 237, 248; *British Queen Mining Co.* v. *Baker Silver Mining Co.,* 139 U. S. 222.

It results, from what has been said, that the judgment of the Circuit Court of Appeals discharging the Guaranty Company from liability must be reversed. And we next consider what judgment ought to have been rendered by

that court upon the record and bill of exceptions brought up from the trial court, in view of the assignments and cross-assignments of error. *Baker* v. *Warner*, 231 U. S. 588, 593; *Baer Bros.* v. *Denver & R. G. R. R.*, 233 U. S. 479, 490; *Fort Scott* v. *Hickman*, 112 U. S. 150, 164, 165; *Allen* v. *St. Louis Bank*, 120 U. S. 20, 30, 40; *Cleveland Rolling Mill* v. *Rhodes*, 121 U. S. 255, 264.

In addition to the questions already disposed of, it is contended in behalf of the Guaranty Company that the Government's claim for interest is without merit and ought to have been overruled. Interest was allowed upon the advance payments, not from the respective dates upon which they were made but from the date when by the terms of the contract the building ought to have been completely finished. In view of the facts, we think there was here no error. The findings make it clear that Boggs not only wilfully and persistently but fraudulently departed from the requirements of his contract, and refused to perform its obligations. He therefore accepted the money well knowing that he had no just right to it; and certainly when the time fixed for complete performance expired, without any attempt on his part to perform it, then, if not sooner, his obligation to return the money to the Government was clear, and he was not under the circumstances entitled to await a demand from the Government before repaying it. The suggestion that the Government has waived interest by delay in pressing its claim is untenable. The cases cited under this head (*Redfield* v. *Ystalyfera Iron Co.*, 110 U. S. 174; *United States* v. *Sanborn*, 135 U. S. 271, 281; *Redfield* v. *Bartels*, 139 U. S. 694, 702), are plainly distinguishable.

On the other hand, the Government insists that it is entitled to recover as against the Guaranty Company, in addition to the penal sum named in the bond, interest thereon from September 1, 1905, the date of Boggs' default, or at least from January 16, 1906, when it is said

the surety was notified of the default.  We are referred to nothing, and have observed nothing, in the findings to the effect that such notice was given to the surety at or about the date mentioned.  The action was commenced more than two years thereafter.  But, aside from this, the only exception taken in the trial court to furnish support for the present contention was: "To the failure of said court to  .  .  .  decide that plaintiff is entitled to interest on the sum of $6,500 from the first day of September, 1905, and to the failure of the court to enter judgment against defendant for such interest."  We do not think this is sufficient to attribute error to the trial court as for overruling a claim for interest on the penalty of the bond from the time of demand made upon the surety, or notice to it of the principal's default.  No such point was raised.  The claim that was made and overruled was for interest from the time of the default, irrespective of notice to the. surety; and that presents a very different question of law.

The primary and essential function of an exception is to direct the mind of the trial judge to a single and precise  · point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials due to inadvertent errors may thus be obviated.  An exception, therefore, furnishes no basis for reversal upon any ground other than the one specifically called to the attention of the trial court.  *Beaver* v. *Taylor*, 93 U. S. 46, 55; *Robinson & Co.* v. *Belt*, 187 U. S. 41, 50; *Addis* v. *Rushmore*, 74 N. J. L. 649, 651; *Holt* v. *United Security Life Ins. Co.*, 76 N. J. L. 585, 593.  And the practice respecting exceptions in the Federal courts is unaffected by the Conformity Act, § 914, Rev. Stat.  *Chateaugay Iron Co., Petitioner*, 128 U. S. 544, 553; *St. Clair* v. *United States*, 154 U. S. 134, 153.

We merely consider, therefore, whether (where the actual damages exceed the amount of the penalty), the ·

United States is entitled, as against the surety, to interest upon the penal sum from the time of the principal's default, in the absence of notice of the default given to the surety, or any demand made upon it. There has been much contrariety of opinion upon the question whether, in any case, the obligee in a penal bond can recover interest in addition to the penalty. The weight of authority in England is adverse to the recovery. 1 Wms. Saunders, 58; *note; White* v. *Sealy,* 1 Doug. 49; *Wilde* v. *Clarkson,* 6 Term. Rep. 303 (disapproving *Ld. Lonsdale* v. *Church,* 2 Term Rep. 388); *Tew* v. *Winterton,* 3 Bro. C. C. 489; 29 Eng. Reprint, 660, 663, *note.* In this country the tendency of the decisions in the state courts seems to be in favor of the allowance of such interest. *Perit* v. *Wallis* (Pa. Sup. Ct.), 2 Dall. 252, 255; *Williams* v. *Willson,* 1 Vermont, 266, 273; *Judge of Probate* v. *Heydock,* 8 N. H. 491, 494; *Wyman* v. *Robinson,* 73 Maine, 384, 387; *Carter* v. *Thorn,* 18 B. Mon. (Ky.) 613, 619. The bond in suit appears to have been made in California, but the contract was to be performed upon a Government reservation within what was then the Territory of Arizona. (See *Scotland County* v. *Hill,* 132 U. S. 107, 117.) We are referred to nothing in the law of that State or Territory indicating a local rule. In this court, although the question seems not to have frequently arisen, the English rule has usually but not invariably been followed. *McGill* v. *Bank of United States,* 12 Wheat. 511, 515; *Farrar* v. *United States,* 5 Pet. 373, 385; *Ives* v. *Merchants' Bank,* 12 How. 159, 164, 165; *United States* v. *Broadhead,* 127 U. S. 212.

In the state of the decisions, we may safely apply the rule followed by Mr. Justice Clifford in a case at the circuit, and we need go no further in order to overrule the contention raised by the Government at the trial of the present case: "Sureties, if answerable at all for interest beyond the amount of the penalty of the bond given by their principal, can only be held for such an amount as

accrued from their own default in unjustly withholding payment after being notified of the default of the principal." *United States* v. *Hills,* 4 Cliff. 618; Fed. Cas. No. 15,369. This is, in effect, the same rule followed by this court in *Ives* v. *Merchants' Bank, supra.* See also *United States* v. *Quinn,* 122 Fed. Rep. 65.

We find nothing else in the record requiring discussion. The result is that the judgment of the Circuit Court of Appeals should be reversed, and that of the Circuit Court affirmed.

*Judgment reversed.*

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.