LINCOLN COUNTY v. COAST BRIDGE CO. et al.

(District Court, D. Montana. March 31, 1916.)

No. 395.

1. BRIDGES ⟨⟩20(4)—LIABILITY OF CONTRACTOR—UNDERMINED PIER—CONJECTURAL DEPTH.

Where, in an action by a county against the contractor and its surety to recover for the loss of a bridge, alleged to have collapsed through the failure of the contractor to build the center pier according to contract, it was established that the pier was undermined by the current and fell because of the failure to drive the piles to refusal, defendant could not escape liability on the ground that, the undermining having refilled, its extent could not be definitely known, and that therefore, for all that appeared, the piles might have been undermined if sunk to any depth; such theory being mere conjecture.

[Ed. Note.—For other cases, see Bridges, Dec. Dig. ⟨⟩20(4).]

2. EVIDENCE ⟨⟩69—BRIDGE CONTRACT—LAWFUL PERFORMANCE—PRESUMPTION.

In an action against a bridge contractor and its surety to recover for the loss of the bridge through improper construction, defendant surety could not escape liability on the ground that, the bridge being across a navigable stream, and there being no proof of the approval of the plans and specifications by the Secretary of War, as required by the act authorizing the bridge, the contract did not take effect, but the bridge was unlawfully built, excusing the surety from liability, since the necessary approval will be presumed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 90; Dec. Dig. ⟨⟩69.]

3. PRINCIPAL AND SURETY ⟨⟩90—CONTRACT—UNLAWFUL PERFORMANCE—DISCHARGE.

Assuming that the contractor had unlawfully built such bridge without securing the necessary approval of the Secretary of War, his surety would not be thereby discharged in the absence of acquiescence by the county in such illegal performance, since a surety engages that the principal will lawfully perform.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 140; Dec. Dig. ⟨⟩90.]

4. PRINCIPAL AND SURETY ⟨⟩159—CONTRACT—UNLAWFUL PERFORMANCE—ACQUIESCENCE—BURDEN OF PROOF.

The burden of proof was on such surety to show that the county acquiesced in the unlawful act of the contractor in building the bridge without the approval of the Secretary of War.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 428–435; Dec. Dig. ⟨⟩159.]

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5.** PRINCIPAL AND SURETY ⬌161—CONTRACTOR'S BOND—ILLEGAL PAYMENTS—DISCHARGE.

The fact that the county made payments to the contractor out of order, or that such payments were anticipated, did not in itself show a substantial departure from the contract discharging the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 85, 439–441; Dec. Dig. ⬌161.]

**6.** BRIDGES ⬌20(5)—ACCEPTING BRIDGE—DEFECTS—WAIVER.

The acceptance of such bridge by the county waived all the contractor's defaults discoverable by reasonable inspection, but not defects not so discoverable.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 39, 40; Dec. Dig. ⬌20(5).]

**7.** BRIDGES ⬌20(6)—BREACH OF CONTRACT—LOSS OF BRIDGE.

Where the collapse of such bridge left standing only the shore pier and approaches, the loss was total, entitling the county to the contract price paid for the bridge, and it was not the county's duty to incorporate such remaining portions into a new bridge in mitigation of damages.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. § 46; Dec. Dig. ⬌20(6).]

At Law. Action by the County of Lincoln against the Coast Bridge Company, a corporation, and another. Judgment for plaintiff.

J. B. Poindexter, Atty. Gen., W. H. Poorman, Asst. Atty. Gen., Jas. M. Blackford, Co. Atty., of Libby, Mont., and Sidney M. Logan, of Kalispell, Mont., for plaintiff.

Gunn, Rasch & Hall, of Helena, Mont., for defendants.

BOURQUIN, District Judge. Action by a builder of a bridge against the contractor's surety. Defendants' objection to any evidence "for the purpose of the record, * * * simply a formal matter," no defect in the complaint being pointed out, was overruled as of a class disfavored, in that it tends to defeat justice rather than to promote it, the court stating if the complaint was defective, amendment would be allowed. If necessary, amendment is deemed made to conform to proof.

The complaint is that the contractor, the Coast Bridge Company, failed to perform its contract, in that it did not drive the center pier piles as required by specifications, and because of which the pier undermined and with the bridge fell. The answer is of denials only. The structure was a highway bridge of 18-foot floor width and two 220-foot spans, supported by a center pier. It was at Rexford, Mont., and over the Kootenai river, a swift mountain stream over 400 feet wide, the water stages varying in depth from 12 to 30 feet.

The contractor agreed to provide "all material, labor and other things of every description" to build the bridge "in good workmanlike and substantial manner * * * so as to make it a perfect bridge according to the plans and specifications" furnished by it. These plans were indefinite in the matter of the depth of the center pier, extent of concrete, and whether or not piles would be used therein, the contractor leaving "that open to be determined after" excavation.

The specifications provided that all piers would "be sunk to the elevation called for on the plans," and "piles shall be driven inside if so ordered by the engineer"; that piles would be round, not less than 12 inches at the larger end and 9 at the smaller, and of the "length called for on the plans," though the contract, of which the specifications were a part, stated the length "shall be specified and determined by the county or its representative"; and that the piles would be shod and ringed if necessary, and driven with a hammer of not less than 2,000 pounds, and under the last blow falling 20 feet, the penetration not to exceed one-half inch.

References to "the engineer" are ambiguous, save in one instance to "the local engineer." If construed to import the builder's engineer (though these were the contractor's specifications), there was no stipulation obligating the builder to secure an engineer. It was optional, and the builder secured none. For the center pier the contractor excavated about 8½ feet deep in sand and gravel. Its superintendent testified the bottom was then tested with an inch pipe and a maul and by four piles 8 inches square, which were driven until destroyed, "probably 4 feet" deep. He ordered like piles 22 feet long, and 62 of them were driven, it would seem, to depths varying from 3 feet 5 inches to 3 feet 11 inches.

When the driving commenced the water was about 18 feet deep, and gradually rose, each pile being driven until its top was practically at water level. They were not ringed nor shod, and broomed little, if any. Around and upon them the concrete center pier was constructed. About six months later the water undermined the pier, so that it overturned and the bridge fell. A diver found that about 16 piles at the downstream end of the pier were intact, the others having been sheared off. Without further detailing the evidence and conflicts in facts and opinions, the finding is that the piles were not driven in accordance with the contract and to refusal, and that because thereof the pier and bridge fell.

[1] It is probable as urged by defendant that these smaller piles would not endure driving strictly as specified. But for all that appears the builder did not order them, and their use was the contractor's choice. Even if maintainable that the builder had knowledge and acquiesced, in that one of its board of commissioners at least saw the piles after they were driven, it had no knowledge that they were not driven as nearly as possible in accordance with specifications and to refusal. And this view of the piles was from the falsework, nothing appearing that it sufficed to and did disclose smaller piles had been driven. Furthermore, the board member was in substance told by the contractor's superintendent that the piles had been driven 7 feet and to refusal, and so satisfied. Since the undermining refilled and its extent is not definitely known, it is urged that it may have been so great that in any event the result would have been the same. The failure to drive the piles to refusal is a sufficient and reasonable cause for the destruction of the bridge. It is clear the undermining was so great that these piles could not resist it. That it might also have been so great that these piles, driven to whatever unknown depth, would

have been refusal could not have resisted it is mere conjecture and not permissible.

Curiously enough, defendant introduced evidence, and contends that the excavation for the pier should have been deeper and no piles used; that the damage is due to defective plans and poor engineering. To concede it would not seem to better defendant's case, for the contractor was responsible for both plans and engineering. And if necessary, the complaint would be deemed amended to conform to this contention and proof, involving no change in the cause of action, but only in the particulars thereof.

[2-4] The contract provided it would not take effect until Congress authorized the bridge, and the War Department approved the plans and specifications. Congress authorized the bridge (see 37 Stat. 71) to be built in accordance with Act March 23, 1906, c. 1130, 34 Stat. 84 (Comp. St. 1913, §§ 9961–9968). This latter act provides that a bridge over navigable waters authorized by Congress, shall not be built until the plans and specifications have been approved by the Secretary of War and the Chief of Engineers. Violation of the act is a misdemeanor punishable by fines, and the bridge may be removed.

For the purposes of this case the contract and acts of the parties suffice to establish that Kootenai river is navigable. There is neither allegation nor direct evidence that the approval aforesaid was secured. Because thereof defendant urges that the contract did not take effect, that the bridge was built unlawfully, and that the surety is not liable. The contract was lawful; and, since it has been performed, it must be presumed it was, as it could be, lawfully performed—that the contingency happened (the necessary approval) upon which it was to become effective. Then, too, so far as this action is concerned, the obligation to secure such approval, if not more, was as much the contractor's as the builder's. The former could not lawfully perform its contract prior to approval. A surety engages its principal will lawfully perform. And if the latter unlawfully performs its contract, the surety is not discharged unless the builder knew of and acquiesced in such unlawful performance. And upon the surety is the burden to prove this.

[5] It is admitted payments were made to the contractor "out of the order" of the contract, and were "anticipated"; but this does not serve to show that substantial departure from the contract which alone may discharge a surety in that it may injure him. If the payments were made out of the order stipulated, it may be the contingencies upon which payments were due happened out of the order anticipated, and that the payments were properly made. Again, county warrants seem to have been referred to as payments, and it does not appear when the money was paid or the warrants even delivered.

[6, 7] The builder accepted the bridge. This waived all the contractor's defaults discoverable by reasonable inspection, like failure to paint the completed bridge (which, however, does not appear to have been of the contract), but not those not so discoverable, like the defective piles. For the latter, but not the former, the surety is liable.

There remains but the amount of damages. The contract price paid

was $29,345.40. The bond is in the sum of $30,000. Of the bridge the shore piers and approaches alone remain. The county has not rebuilt. It may not. It would not seem bound to do so and to incorporate these remnants to mitigate damages. Under the circumstances, such action well may be imprudent and impracticable. Its right is to refrain or to build of a new design and materials. See U. S. v. Fidelity Co., 236 U. S. 526, 35 Sup. Ct. 298, 59 L. Ed. 696; 3 Suth. Damages, § 699. The loss is total. Any salvage is the contractor's.

Plaintiff does not claim or suggest it is entitled to interest, and the judgment will be for the contract price paid and costs.