## HARBOUR v. UNITED STATES.
### No. 6311.

Circuit Court of Appeals, Fifth Circuit.
Dec. 11, 1931.

Rehearing Denied Jan. 19, 1932.

G. de Graffenried, of Dallas, Tex., for appellant.

Sarah Cory Menezes, Asst. U. S. Atty., of Dallas, Tex., and Norman A. Dodge, U. S. Atty., of Fort Worth, Tex., for the United States.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant, Stix Harbour, was convicted of conspiring with Beulah Cates

to violate the Harrison Narcotic Act (26 USCA § 211, and § 691 et seq.) by unlawfully purchasing and selling morphine. He assigns as error the refusal of the court to instruct a verdict of not guilty at the close of the prosecutor's case, the refusal to give certain requests to charge, and the admission of certain evidence over objection. The appellant introduced evidence after the refusal to instruct the verdict, and did not, at the close of all the evidence, renew his motion. He thereby waived the error, if any, in the refusal. But we are satisfied that the evidence warranted the verdict of guilty. It was to the effect that Beulah Cates took money from the government witness, who had no order form, and, after telephoning, said she was going to meet Harbour at a nearby corner, was seen to meet some one there in a Buick roadster, and soon returned with an unstamped package of morphine. The following day, after again telephoning, she was given $60 of marked money, and again, saying that Harbour would meet her at the same place, did meet him near the corner, he being in a Buick roadster, and started off with him when they were both overtaken and arrested, Harbour having $55 of the money in his possession, and the other $5 being later found at Beulah Cates' home. When arrested, Harbour said the $55 was his; that he got it from Beulah Cates; that they were on the way to get an ounce of morphine, but had not yet gotten it. Later he said he was not selling the morphine, but just getting it for her. He admitted getting the ounce for her the day before also, but claimed he did not sell it or get any money out of it. No morphine was found on his person. His own admissions, though later denied by him, if credited by the jury, amply warranted conviction of criminal co-operation by agreement with Beulah Cates in the illegal purchase and sale by her of morphine; or the circumstances taken together justify a belief that she was for a commission helping him to sell it.

The error assigned on the refusal to give in charge written requests cannot be considered for lack of proper exception. The bills of exception signed three weeks after the trial state that the requests were presented to the court at the close of the evidence, but do not state that before the jury retired any exception had been taken to the failure or refusal to charge them. In certifying the bills, the judge expressly states that no exception was taken. The salutary rule of federal procedure is, that rulings made during a trial must be openly and definitely excepted to before the jury leaves the bar, that the court and the opposing party may be positively and clearly informed that the ruling is not acquiesced in, but is to be made the basis of an appeal. This is but fair to the court and to the opposing party, gives an opportunity for reconsideration, and tends greatly to limit error and save new trials. Walton v. United States, 9 Wheat. 651, 6 L. Ed. 182; Newport News & Mississippi Valley Co. v. Pace, 158 U. S. 36, 15 S. Ct. 743, 39 L. Ed. 887; United States v. U. S. Fidelity & Guaranty Co., 236 U. S. 512, 529, 35 S. Ct. 298, 59 L. Ed. 696. We are aware that by statute in Texas, in which state the trial occurred, it is unnecessary in the state courts to except to a refusal to give a written request to charge in order to assign error upon it; but the statute has no application to appellate procedure in the federal courts. The Conformity Statute (28 USCA § 724), is limited to civil cases at law, and, even in those, the matter of taking exception is not controlled by the state practice, but by federal statutes and the common law. 28 USCA § 776, note 4. The precise point here involved was settled upon a similar statute of California in St. Clair v. United States, 154 U. S. 134, 153, 14 S. Ct. 1002, 38 L. Ed. 936. See, also, Southern Transportation Co. v. Ashford (C. C. A.) 48 F.(2d) 191. The Circuit Courts of Appeal have sometimes, especially in criminal cases, noticed vital error not properly excepted to when the whole record disclosed that otherwise there would be a serious miscarriage of justice, 28 USCA § 776, note 2, but this is not such a case.

The errors assigned on admission of evidence which relate to statements of Beulah Cates not made in Harbour's presence are unsupported by the record in some instances, and in others relate to facts so indisputably proven otherwise that no harm could have been done if error was committed. As we understand the record, the court ruled out as affecting Harbour all that Beulah Cates said about him during the two negotiations with her for the purchase of morphine, except her statement on leaving her room that she was going to a named street corner to meet Harbour. This was not narrative, but part of the res gestæ of the transactions, and of course bound Harbour if he was really co-operating. That he was co-operating on both occasions was apparent from other evidence hereinbefore referred to. Compare Lancaster v. United States (C. C. A.)

39 F.(2d) 30, 31. She did meet him where she said she would, and, on the second occasion, was arrested with him. It was a miracle of prophecy if she had no appointment with him; a situation plainly having evidential value independently of the principle that sayings of a coconspirator pending a conspiracy and in furtherance thereof are admissible.

There is a further contention that a conversation was erroneously admitted which happened just after the arrest between Fred Cates, the husband of Beulah Cates, and Bessie Harbour, the wife of appellant, on the stairway leading to the apartment of Cates while the government witness Mena was waiting for the morphine. Such a conversation was in itself plainly irrelevant. It came into the case thus: Cates, as a witness for the defense, testified that his wife left the room not to meet Harbour, but to go at Cates' suggestion to his niece's home on the other side of the city to escape being further importuned by Mena to get morphine for him. On cross-examination, Cates was asked if he had not met Bessie Harbour on the stairs looking for her husband, and if she had not asked: "Where is Stix?" and if Cates had not replied that "Beulah just went out to meet him." All this Cates denied. If he did say to any one that Beulah had just gone out to meet Stix Harbour, it was a statement contradictory to his testimony that she had started to his niece's house, and was relevant to impeach him. To this end, his attention had to be called to the time and place and circumstances and persons present, just as was done. The ruling admitting this cross-examination for this purpose was clearly correct. Following the foundation thus laid, Mena was put on the stand to testify as to what occurred. The defense objected broadly to the conversation asked about, because irrelevant, hearsay, and not binding on the defendants; neither being present. The court ruled the evidence admissible solely on the issue of the credibility of the witnesses, and defendant excepted. This ruling was right, authorizing proof of the claimed contradictory statement. Mena then testified that Bessie Harbour asked Cates "Where is Beulah?" and he said: "Beulah met your husband." Mena was then asked: "Who said 'Beulah met your husband?'" and he answered: "Fred." Having answered the question, Mena then volunteered the following: "Bessie said, 'That is right, they are supposed to meet on the corner. Oh, my God, I guess they got arrested.'" This volunteered testimony

was irrelevant and not responsive to the question asked, but no motion to exclude it was made. The court of his own motion again instructed the jury that the conversation was admitted only to throw light on the credibility of Cates and Mena, and not as any evidence that Mrs. Cates and Harbour did or did not meet, and that the same applied to the testimony of Cates when he was on the stand. The court added that: "I do not recall that there was any conversation there that might be of harm to the defendants, but if there was any harm I so limit it." No further objection or exception was made. Had the court's attention been specially called to the irrelevancy of the last part of the conversation and its possible harmfulness now insisted on, we may presume it would have been excluded. There was no error in the rulings made and excepted to.

Judgment affirmed.