## UNITED STATES v. ZIMMERMAN.
### No. 6862.

Circuit Court of Appeals, Seventh Circuit.
Dec. 6, 1939.

James P. Murphy, of Fort Wayne, Ind., for defendant-appellant.

William J. Campbell, of Chicago, Ill., for plaintiff-appellee.

William J. Campbell, U. S. Atty., and Paul M. Plunkett, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

The defendant was charged in a three-count indictment with willfully attempting to evade and defeat his income taxes for the years 1929, 1930, and 1931, respectively, in violation of Section 146(b) of the Revenue Act of 1928 (Title 26 U.S.C.A., § 145(b). A trial was had by a jury and defendant found guilty on counts 2 and 3 of the indictment, and not guilty on count 1. On January 20, 1939, judgment was entered upon the jury verdict and the appeal is from this judgment.

The first count of the indictment alleges that the defendant, for the year 1929, had a

gross income of $166,507.87; that he was entitled to deductions of $3,925.05, leaving a net income of $162,582.82 upon which a tax became due of $29,764.17. It also alleges that the income tax return filed by the defendant for the year 1929 disclosed a gross income of $91,170.75, with deductions of $40, and a tax of $88.24. The second count of the indictment alleges that for the calendar year 1930, the defendant had received a gross income of $122,305.62 and was entitled to deductions of $17,381.61, leaving a net income of $104,924.01, upon which an income tax of $17,200 became due; that in the return for that year, defendant shows his gross income to have been the sum of $26,-347.12, with deductions of $20,340, leaving a net income of $6,007.12 and, after deducting dividends and personal exemptions, shows no tax due. The third count alleges that for the year 1931 defendant received a gross income of $123,053.13, with deductions in the amount of $11,246.46, leaving a net income of $111,806.67, upon which an income tax of $18,795.41 became due. Defendant, in his return for this year, shows his gross income to have been $12,739.97, deductions in the amount of $11,246.46, with a net income of $1,493.51, and after deducting personal exemptions, shows no tax due.

The evidence discloses the defendant to have been engaged in the conduct of lottery enterprises since about 1922. In the operation of such business, tickets were sold through agents located in various cities, on horse races, baseball games and the daily balance in the United States Treasury. The tickets ranged in price from 25 cents to $1.00 each, and the holders of certain tickets became "winners," and entitled to certain designated prizes. Defendant's agents received as their commission 40% of the money realized from tickets sold and from this commission paid sub-agents employed by them. After deducting the commission and prize payments, the balance of the proceeds was remitted to the defendant. In instances where the proceeds were insufficient to pay the prizes, defendant would supply the funds to make up the difference. Remittances were made by these agents to the defendant under the names of Joe White, Joseph White, Empire Finance Company and Manhattan Finance Company. Each of these companies was owned and controlled by defendant.

In October, 1930, one Perkins, a Deputy Revenue Collector, was assigned to investigate defendant's income. Shortly thereafter, the defendant, in company with one Golden (employed as an Internal Revenue Agent, but not assigned to defendant's case), went to the office of the Chief Deputy Collector, and there a return for 1929 was prepared from the figures furnished by the defendant, and filed. According to defendant's testimony, this was the first income tax return he had made, notwithstanding that prior to December 30, 1928 he had accumulated from the business $100,000 in cash, and $66,000 in securities. Inasmuch as defendant was acquitted on count 1, which concerned his income for the year 1929, we shall not review the testimony relative thereto.

Defendant's income tax return for 1930 was prepared by one Sarett, his bookkeeper, assisted by Golden. The return, as charged in the indictment, discloses a gross return of $26,347.12, with deductions in such an amount as to disclose no income tax due. Included in the deductions is an item listed as a "bad debt" referred to as the McBride note, in the amount of $20,340. Early in 1930, the defendant organized the Empire Finance Company in Chicago, Illinois, which was formally incorporated June 5, 1930. The business of this company was the making of automobile loans, and was operated by the defendant in addition to his lottery business. In defendant's return for 1930, it appears that the only income derived from the lottery business was an item of $1,500.

The manner and method employed by the Government in determining defendant's gross income for 1930 involves a consideration of numerous records, such as bank accounts, stock transactions, wire transmittals of money, etc. It seems unnecessary for us to attempt a detailed analysis of these records for the reason that defendant accepts, as we understand, the Government's figure of $160,845.86 as his gross income from the lottery business for the year 1930. Briefly, this amount is arrived at as follows: The amount of bank deposits in the name of the defendant and Empire Finance Company was $432,161.44. The gross income of the Finance Company was $271,-140.58, which subtracted from the total deposit leaves the figure of $160,845.86 as defendant's gross income. To this amount the Government adds an item of $1,794.35 which represented a remittance to defendant by one of his agents, but not deposited in the bank, which brings defendant's total gross income to the amount of $162,640.21.

The gross income having been thus determined, it becomes apparent that the net income upon which defendant was liable for income tax, would depend upon the allowable deductions from such gross income. Here the calculations of the Government and the defendant are at wide variance. Without giving the figures in detail, the Government contends that it has allowed as deductions every item of expense of the lottery business disclosed by the record, such as salaries, printing, telephone and telegraph, rent, general expenses, winners (paid by defendant) and depreciation which in the total amount to $82,332.39. This amount subtracted from $162,640.21 leaves a balance of $80,307.82, which the Government contends is defendant's total net income from his lottery business. To this figure is added the sum of $27,593.02, representing other items of income shown by the record to have been received by the defendant, which results in a total net income of $107,900.84. Certain other deductions are allowed in the amount of $503.16, leaving a net taxable income of $107,397.68, upon which there was due a tax in the amount of $17,888.29. Defendant contends that his total net income from all sources was $4,623.13, which is $102,744.55 less than the total income as shown by the Government's figures. The explanation for this discrepancy must rest largely upon the testimony of the defendant. He testified that $7,000 of his alleged gross income represented a loan made to him by his sister, who corroborated him in this respect, although there are no checks, receipts, vouchers or records in corroboration of their testimony. Defendant also testified that $25,685 of his alleged gross income represented a loan made to him by one T. W. Stephens.[1] He testified this loan was made to him at different times and deposited in his bank account. There is no check, note or other record evidence in corroboration of defendant's testimony in this respect. Stephens is now deceased, and his widow testified at the hearing. She did not know how much money, if any, her husband had invested with defendant, but testified the defendant gave her $200 in 1930, $1500 in 1931, and subsequently various amounts which, to the year 1938, totaled $8,600. She made no claim to the $40,000, which, according to defendant's testimony, was owing to Stephens at the time of his death. Defendant claims that his expenses in the conduct of the lottery business were $45,712.46 more than the expenses of that business as calculated by the Government. As we understand the record, his claim in this respect is not supported by any record evidence, but he takes the total amount of cash withdrawn from the bank, figures his living expenses for the year at $5200 ($100 per week) and concludes that the difference between the amount spent for living, and the amount of cash withdrawn "must have been paid as additional expenses of the business." The Government included in defendant's gross income from the lottery business, an item of $1,794.35, having traced the cash into the hands of defendant, and also included an item of $2,582.74 as gross income from sources other than the lottery business over and above the amount shown in defendant's tax return. Defendant seems to have made no explanation with reference to either of these items. In his return, he claimed as a deductible item, the amount of $20,000, by reason of a bad debt. The debt is based upon a promissory note endorsed by one Zimmerman to the Empire Finance Company, and which was entered upon the books of the Finance Company at the time of its incorporation, June 5, 1930. In March, 1931, the note was sent to a bank for collection and was never charged off the corporate books. The note was reduced to judgment and settled November 28, 1938. In the Government's calculations, this note was not considered as a deductible loss.

For the year 1931, the total amount of defendant's gross income from the lottery business was determined in a manner similar to that for 1930, and was the sum of $159,164.94. Defendant accepts this as the correct amount. Again, as in the previous year, the calculations of the respective parties from this point on disclose a wide variance. After adding to this sum certain amounts traced into the hands of the defendant, but not deposited, and after allowing all expenses disclosed by the record in the operation of such business, the Government arrives at the sum of $113,519.16. It adds to this sum, items of income from other sources as shown by defendant's return, which brings the amount to $123,259.13. After allowing deductions in the amount of $11,246.46, a net taxable income of $112,012.67 is found with a tax liability in the sum of $18,903.64. Defendant claims, for

---

[1] Defendant also testified that of the money traced to his bank account in 1929, was included a loan from the same Stephens in the amount of $40,000.

this year, deductions in his lottery business in the amount of $108,898.17. Other deductions are claimed which enable him to show a net loss for the year of $1,239.72.

We shall not give all the details with reference to the defendant's claimed deductions. We mention some of the larger items here. He claimed that $30,000, included in the Government's figures, represented amounts taken from his safety deposit box from time to time and deposited in the bank. He claims this withdrawal of $30,000 from the bank was made on January 3, 1931. His testimony is corroborated to the extent that the withdrawal was made from the bank, as claimed, by a check of the same date and amount, but there is nothing to indicate this amount was deposited or included in the defendant's deposits as calculated by the Government. He claims another item in the amount of $20,000 shown in his bank deposit was money removed from his safety deposit box. Another deductible item, as claimed by the defendant, was the sum of $46,627.82 as expenses in the operation of the lottery business. For this year, as in the previous, the defendant takes the total of cash withdrawn from the bank, deducts $5200 as his living expenses, and concludes that the rest "must have been used in the payment of expenses." There appears to be nothing in the record which corroborates the defendant in this respect. As heretofore stated, the defendant was obligated to furnish the money to pay prize winners only in the event there was not sufficient money in the hands of his agents. Some of the agents were witnesses at the hearing and gave testimony as to certain amounts advanced by the defendant for such purpose. It is the contention of the defendant that a large portion of the expenses in the conduct of the lottery business represents money advanced by him for the payment of prizes. On the other hand, the Government points out that the defendant had been allowed as deductions, all items of expense in this respect as shown by the record.

■■ The principal contested issue is the alleged error of the court in its refusal to direct a verdict for the defendant. Error is also assigned upon certain portions of the court's charge to the jury. From the statement of facts, heretofore related, we think it is readily apparent that an appropriate jury question was presented.[2] A study of the record is equally convincing that there is ample testimony in support of the jury's verdict. In fact, it is of such a convincing character, that it is difficult to conceive of a verdict different from that rendered. We think our conclusion in this respect finds sufficient support in the statement of facts as related, and there is no occasion for us to indulge in any lengthy dissertation concerning them. It is disclosed, without dispute, that defendant, as shown by his bank deposits, had a gross income of $160,845.86 from his lottery business for the year 1930, and $159,164.94 for 1931. In addition thereto, for each year, the Government traced into the hands of the defendant, additional sums of money in considerable amounts. The defendant undertook to explain that substantially all of this income had been expended in the conduct of the business, and that, therefore, there was no net income upon which a tax was required. As was said by this court in Malone v. United States, 7 Cir., 94 F.2d 281, 288: "* * * When, however, he became a witness and sought to explain, the jury was not bound to accept his story as true. Their verdict discloses they disbelieve him, and in this, we think, they were entirely justified."

Thus, the jury was not required to accept the defendant's explanation. In fact, we think they were justified in rejecting it.

■ It is argued by the defendant that he was handicapped, because he had kept no books disclosing income and expenses relative to his lottery business. Even if so, this can not be used as an excuse to escape the payment of income tax. We doubt, however, if the lack of such books worked to the disadvantage of the defendant. A study of the record is convincing that the income of the defendant was greater than the Government calculated it to be. For instance, some of defendant's agents who were witnesses testified as to the amounts of money forwarded to the defendant for only a portion of the taxable year while, at the same time, they testified they were employed during the entire year. In the Government's calculations are included only the actual amounts shown to have been received by the defendant. While it is certain that further sums were sent him, they were not included, because of the lack of

[2] Oliver v. United States, 7 Cir., 54 F. 2d 48, 50; Guzik v. United States, 7 Cir., 54 F.2d 618, 620; Paschen v. United States, 7 Cir., 70 F.2d 491; Malone v. United States, 7 Cir., 94 F.2d 281.

proof as to the amounts which would have been available had accurate records been kept.

Defendant lays great stress upon the claim of the Government that he had an income of $147,828.09 for the year 1929. Thus, it is argued that at the beginning of 1930 (the first year in question) defendant was possessed of that amount of money which might well have been included in his bank deposits for the years 1930 and 1931. This amount, however, and a great deal more, in addition to any bank deposits included in the Government's calculations, is shown in expenditures and investments made by the defendant. For instance, at the time of the incorporation of the Empire Finance Company, defendant had invested in that concern, in cash and other assets, the sum of $221,776.42. If this were not sufficient explanation, there appears the defendant's own statement to the effect that he had safety deposit boxes in New York, Cleveland and Chicago in which he kept cash in amounts as large as $100,000.

■ ■ Defendant also advances the argument that the circumstances fail to disclose any evasion of income tax was willful. (By the language of the statute, of course, this is an essential element of the offense.) The circumstances, however, point convincingly to the contrary. Assuming that the defendant is a person of ordinary business intelligence, and no other assumption is consistent considering the magnitude and extent of the business he conducted, it seems inconceivable he would not have known long prior to 1930 that the Government required of him the filing of an income tax return upon which tax could be computed. The fact that he had never filed a return prior to 1930; that he did business under divers names; that he kept no books and records of his receipts and disbursements, especially as they pertained to the lottery business; that he kept large sums of cash in safety deposit boxes in numerous banks, and many other circumstances, were sufficient to justify the jury—in fact, impel the jury to the conclusion that the defendant deliberately and willfully evaded such tax. As was said by this court in Oliver v. United States, 7 Cir., 54 F.2d 48, 50: "The question of willfulness enters into and is a part of the offense charged * * *.

Appellant was a man of wide experience extending over a period of many years, and the fact that he had such a large income during the years in question, some of which was derived from questionable sources, and that he did not even respect the law enough to file a return, is sufficient in itself to justify the conclusion that such failure was willful. * * *"

■ Defendant assigns numerous errors concerning the court's charge to the jury. The record, however, shows no specific objection or exception to any part of the charge. A general exception was taken in the following language: "To the giving of the above charge the defendant at the time excepted." Such an exception repeatedly has been held to be insufficient to preserve any question for appellate review. [3] As was said by the Supreme Court in the Burns case, 274 U.S. 328, at page 336, 47 S.Ct. 650, at page 652, 71 L.Ed. 1077: "* * * The rule is well established that, where a series of instructions are excepted to in mass, the exception will be overruled, if any one of them is correct. [Citing cases.] Exceptions to a charge must be specifically made, in order to give the court an opportunity then and there to correct errors and omissions, if any. [Citing cases.] Even if some of the instructions were erroneous, the exceptions taken were not such as to require a new trial."

Notwithstanding the situation in this respect, we have read the charge, and conclude there is little, if any, merit in defendant's criticism. In fact, the court's charge was a fair and thorough pronouncement of the law applicable to the situation. Under the circumstances, we think it would serve no useful purpose for us to enter into a discussion of the numerous criticisms in this respect. It might be well to point out that defendant, in his brief, makes a valid criticism of an instruction concerning the credibility of witnesses as that charge was contained in the original record filed in this court. The instruction reads: "If you believe from the evidence that any witness has sworn falsely to any material matter in this case, * * *." The word "willfully" as will be noted, was omitted. In a supplemental transcript, however, it is shown that the omission of the word "willfully" was an error in the preparation of the transcript,

---

3 Burns v. United States, 274 U.S. 328, 336, 47 S.Ct. 650, 71 L.Ed. 1077; United States v. United States Fidelity Co., 236 U.S. 512, 529, 35 S.Ct. 298, 59 L.Ed. 696; Malone v. United States, 7 Cir., 94 F.2d 281, 288; Paschen v. United States, 7 Cir., 70 F.2d 491. 503.

and the charge, as given to the jury, contained the word "willfully" and thus was properly given. In fairness to defendant's counsel, we state that the supplemental record was filed subsequent to the filing of defendant's brief. Otherwise, we assume there would have been no occasion for the argument presented by the defendant in this respect.

We are convinced the defendant had a fair trial and that the record amply supports the judgment.

It is, therefore, affirmed.