CrREEN, Judge,
delivered the opinion of the court:
The plaintiff brings this suit to recover what it alleges to be just compensation for the action of the defendant in canceling four contracts which plaintiff held, and directing work thereon to cease.
It appears without dispute from the evidence that in the years 1917 and 1918 the plaintiff, which is a builder of turbine equipment for the propulsion of vessels, had entered into thirteen contracts with various parties for the construction of such equipment. Of these contracts, only three give rise to any controversy involved in the case, namely, those entered into with the following-named parties: G. M. Standifer Construction Corporation, Turbine Equipment Company — Luckenbach, and Supple & Bal-lin. The other contract in dispute was made directly with defendant by plaintiff for the construction of the same kind of equipment. In the early part of the year 1918, and after plaintiff had incurred cost and expenditures on these con *61 tracts, the United States Shipping Board Emergency Fleet Corporation served upon plaintiff a notice and order of requisition with reference to each of the three contracts above mentioned as having been made with parties other than the Government, and by letter signed by one of its officials separately advised plaintiff and the several parties with whom these contracts had been made that the several contracts had been requisitioned by the Government, and that the United States would make just compensation for the turbine equipment which the plaintiff was required to complete, and that the Emergency Fleet Corporation assumed the responsibility of these contracts and would make payment to plaintiff; also, in several letters with reference to these contracts, stated both that the Government had requisitioned the contracts, and that it had requisitioned the turbine equipment.
While plaintiff was engaged in providing materials and carrying on the work necessary to complete the contracts hereinabove referred to, including the contract made directly with the Government, the defendant notified plaintiff to stop work thereon, which it accordingly did. Defendant paid plaintiff for such work as had been performed on the contracts, and it was later agreed between the plaintiff and the Fleet Corporation that plaintiff should take over the materials acquired and on hand at its plant for the performance of said contracts at a salvage value specified for each contract and amounting to a total of $20,149.88, for which the Fleet Corporation took credit.
In addition to the profits which plaintiff alleges it would have made had it been permitted to carry out the contracts, the plaintiff seeks to recover all actual costs and expenditures incurred in the work up to the time it was stopped by the direction of the Shipping Board, together with’ the cost of caring for, handling, and storing materials from the time when the work was stopped until the defendant finally directed the disposition thereof, and also for extraordinary expense which plaintiff claims was incurred by reason of being compelled to stop the work on the contracts. With reference to these claims the defendant, while conceding that plaintiff is entitled to just compensation for *62 damages received by the cancellation of the contracts, insists that plaintiff can in no event recover for prospective profits, that the amount of damages claimed by plaintiff on account of actual expenditures for work and materials and as compensation for handling and storing materials greatly exceeds the amount which can properly be allowed on account of these claims. Defendant also insists that plaintiff is not entitled to anything whatever on its claim for extraordinary expense alleged to have been caused by interference with the orderly procedure of plaintiff’s shop work by reason of the cancellation of the contracts.
These defenses constitute the issues in the case and present for decision the following questions:
First, whether plaintiff can, in any event and on any of the contracts, recover for prospective profits, and if so in what amount?
Second, if not entitled to recover prospective profits, whether plaintiff can recover the value of its contracts at the time of cancellation, if they had a value ?
Third, what amount should be allowed plaintiff for actual costs and expenditures?
Fourth, what amount should be allowed plaintiff as cost of caring for, handling, and storing materials ?
Fifth, whether plaintiff should be allowed anything for extraordinary expense, and, if so, in what amount?
Another question which has hot been discussed in argument also arises as to whether plaintiff is entitled to interest on the items which make up the amount of its recovery.
Considering the first of these questions, we find that defendant contends that under the act of June 15, 1917, 40 Stat. 182, ch. 29, the Government had the right to cancel all or any part of the work provided for by these contracts whether between the Government and another party or between private parties, where the Government had taken over or requisitioned the contracts, and that it has been so held in Russell Co. v. United States, 261 U. S. 514, 519-521, and that the same rule is laid down in Meyer Scale & Hardware Co. v. United States, 57 C. Cls. 26, and having this right there can be no recovery in the case except for actual costs and expenditures, etc.
*63 It is clear that the Government had the right of cancellation for the act of June 15, 1917, authorized the President, in subdivision (b) thereof—
‘£ (b) To modify, suspend, cancel, or requisition any existing or future contract for the building, production, or purchase of ships or material.”
In Russell Co. v. United States, supra, it was held that this provision of the statute applied to all contracts in relation to ships and materials therefor, whether between the Government and another party or between private parties; and in the same case, the court said:
“ The contract, we must assume, was entered into with the prospect of its cancellation in view, since the statute was binding and must be read into the contract. The possible loss of profits therefore must be regarded as within the contemplation of the parties.”
The decision in the Russell Co. case, therefore, clearly determines that when such contracts were entered into after the enactment of the statute to which reference has been made, there can be no recovery for prospective profits.
While two of the contracts in question were entered into prior to the time that the statute referred to went into effect, an examination of the decisions of the Supreme Court leads us to the conclusion that the plaintiff must be denied a recovery for prospective profits on these contracts also. In giving our reasons for this conclusion it becomes necessary to accurately keep in mind the facts in the case at bar in order to properly apply the rules laid down by the Supreme Court.
Counsel for plaintiff contend that it is entitled to just compensation for the acts of the Government, and that under the decisions of the Supreme Court just compensation is the value of the property taken at the time of the taking. It must be conceded that the plaintiff is entitled to just compensation for the acts of the Government, but there was in fact no property taken; instead the contracts were canceled. It is true the Shipping Board notified the plaintiff that the contracts had been requisitioned, but it also notified the plaintiff that the Government had taken over *64 the contracts and would assume the obligations thereof. Afterwards the contracts were canceled, and if plaintiff maintains its action at all it must base it upon this cancellation. This, however, does not deprive it of just compensation, for the same statute that provided for the cancellation of the contracts also provided that—
“ Whenever the United States shall cancel * * * any contract, * * * it shall make just compensation therefor,” but in no case has the Supreme Court held that “ just compensation ” included prospective profits. On the contrary, in the case of the Russell Co., supra, which was like the case at bar, being one in which the manufacturer was bringing the suit and seeking to recover damages by l’ea-son of the cancellation of the contract, the Supreme Court said:
“ In fixing just compensation the court must consider the value of the contract at the time of its cancellation, not what it would have produced by way of profits for the car company if it had been fully performed.”
The case of the Brooks-Scanlon Corp. v. United States, 265 U. S. 106, is relied upon by plaintiff but it does not support its contention. The plaintiff in that case was allowed the value of its contract but anticipated profits were not allowed. As before stated, the Supreme Court has uniformly held that just compensation did not include anticipated profits. In this connection it should be noted that in the Russell Co. case, supra, where the manufacturer was seeking to recover anticipated profits as a part of just compensation, it was said:
“ This contention confuses the measure of damages for breach of contract with the rule of just compensation for the lawful talcing of property by the power of eminent domain.”
We therefore feel constrained to hold that the plaintiff in this case can not be allowed for anticipated profits on any of the contracts, notwithstanding the fact that if it had been permitted to complete them substantial profits would have been realized.
*65 This brings us to the second question in the case which is whether the plaintiff can Recover the value of its contracts at •the time of cancellation.
We have already shown by a quotation from the opinion in the Russell Co. case that the Supreme Court has held that “in fixing just compensation the court must consider the value of the contract at the time of its cancellation,” and in accordance with that ruling we have determined this value from the evidence. In the Russell Co. case the Supreme Court stated “that no prudent person, desiring to acquire this contract, would have paid for it the full amount which could be realized upon completion.” In the case at bar no outside person would have paid anything for the contracts for the reasons stated in the findings (see Finding XIII), but the fact that owing to the peculiar circumstances of this case no one would have desired to purchase them does not show that they had no value to plaintiff, nor does it show that plaintiff has suffered no loss by reason of the cancellation thereof which would be included in just compensation. On the contrary, the evidence clearly shows that the contracts had a value to plaintiff and that it suffered a loss by reason of the cancellation thereof outside of the profits which it anticipated. We think also that the court -may determine the amount of this item from all of the facts and circumstances in the case which bear thereon, as shown by the evidence, and have fixed the amount thereof in the findings at $8,500.00. In the opinion of this court rendered in the Russell Co. case, 51 C. Cls. 464, 491, this is denominated a “ cancellation allowance,” but the question of what it should be called is not important. The real point is that we hold that it is a proper item to be included in just compensation.
The next question to be determined is what amount should be allowed plaintiff as the cost of caring for, handling, and storing materials.
As before stated, the defendant insists that the amounts claimed by plaintiff for actual costs and expenditures incurred in the work which had been done on the contracts before cancellation, and for taking care of, storing, and handling materials which it was compelled to take care of until *66 defendant finally directed their disposition, are excessive. Counsel for defendant also claim that the amount allowed on these items by the commissioner, which is much less than that claimed by plaintiff, is also excessive, but after going over' the evidence we think the amount allowed by the commissioner is substantially correct and have adopted it in the findings of fact.
On the next question as to whether the plaintiff is entiiled to anything for extraordinary expense caused by the cancellation of the contracts the evidence shows clearly that the plaintiff is entitled to recover on this item and the only difficulty in connection with it arises with reference to the amount.
The plaintiff claims $100,000 damages by reason of the stopping of work on the contracts, causing what is called extraordinary expense, including additional clerical hire, additional manufacturing cost, and interference with the efficiency of plaintiff’s plant operation. Counsel for defendant insist that it is entitled to nothing on this item. The-commissioner allowed $30,000. It would serve no useful purpose to review the evidence in support of this item. Necessarily, as shown by the findings, as to all of the contracts, plaintiff had to withdraw all the drawings, jigs, gauges, and fixtures intended for the work contemplated by the contracts, and it would be some time before the work could be rescheduled, the operatives reassigned to new work, and the books rearranged in conformity therewith. There is no way of estimating the amount which should be allowed exactly, but here again we think the commissioner was substantially correct and have adopted his findings after having gone over the evidence.
As before stated another question arises, not specially argued, as to whether the plaintiff is entitled to interest on the several items of its recovery. If the instant case had been one in which1 the amount of plaintiff’s recovery was to be determined by a contract, we think it clear that no interest could be allowed; but we think it is not a case upon a contract but one in which the amount of plaintiff’s recovery is determined by a special statute which provides that it shall receive just compensation. In the opinion on the Russell Co. *67 case handed down by this court (57 C. Cls. 464), this court said that the case under consideration was not one on a contract but under a special statute and interest was awarded. This decision was subsequently affirmed on review by the Supreme Court (261 U. S. 514), and was followed by the Court of Claims in a number of cases, upon some of which certiorari was denied.
The question of whether this court can allow interest on claims such as are involved in the case at bar seems to us to be settled by the decisions of the Supreme Court. In the case of Brooks-Scanlon Corp. v. United States, supra, the Supreme Court, reviewing the decision of this court, said (p. 123):
“ If the taking precedes the payment of compensation, the owner is entitled to such addition to the value at the time of the taking as will produce the full equivalent of such value paid contemporaneously. Interest at a proper rate is a good measure of the amount to be added. Seaboard Air Line Ry. Co. v. United States, supra; United States v. Benedict, 261 U. S. 294, 298; Brown v. United States, 263 U. S. 78.”
It is true in this case we have found that the contracts were canceled and not appropriated but the statute upon which this action is based provided, as we have already shown, that “ just compensation ” should be awarded. The citation from the Brooks-Scanlon case supra, shows the doctrine expressed therein was based upon Seaboard Air Line Ry. Co. v. United States, 261 U. S. 299, and other cases, wherein it was held that just compensation included an award of interest from the time that the claim against the Government first accrued. There can be no difference in the principle between the allowance for interest made in the Broohs-Seanlon case and the allowance of interest to the plaintiff in this case from the time that its respective claims accrued. It is allowed not as interest, but, as stated in the Broohs-Seanlon case and other cases, as a good measure of the amount to be added for the delay in payment; otherwise the plaintiff would not receive just compensation.
Following the rule above stated, we hold that just compensation entitles the plaintiff to interest at the rate of six per cent upon the amount of its actual expenditures less pay *68 ments upon the several contracts. This interest should be calculated thereon from an equated date determined by considering the amount due on the several contracts and the date when each was canceled, and we find this equated date to be March 17, 1919. In this connection it should be stated that the defendant’s attorneys practically concede that the plaintiff is entitled to an allowance of this kind, which, in the brief on behalf of defendant, is fixed at ten per cent of the amount of actual outlay and expenditures on the part of the plaintiff, which, however, are fixed at a less amount than that to which we think the plaintiff is entitled. This court in the Russell Co. case, supra, added the amount of the “ cancellation allowance” to the amount of the other items of damages which the court found the plaintiff had sustained, and the total thereby obtained was held to constitute “ just compensation.” In this case we are obliged to keep this cancellation allowance, as we have called it for want of a better term, separate, as it will draw interest from a different date, but we arrive at the total amount of just compensation in the same manner as this court did in the Russell Co. case.
The plaintiff is also entitled to interest on the amount of its other items of recovery and the method which we have used in calculating the amount of interest is as follows:
Interest will be computed on the balance of the amount expended on each contract separately, from the date of cancellation thereof up to the time when the salvaged materials were received. From the total of the costs and expenditures (less credits) together with the interest computed as aforesaid, the agreed value of the salvaged materials will be deducted. Upon the amount remaining interest will be computed up to the time of payment of the award. To this balance due on costs and expenditures, together with interest,, will be added the amounts allowed for extraordinary expense and cost of handling and storing materials. From the total thus obtained the amount paid on the award will be deducted to obtain the balance due at the time of payment of the award. The plaintiff is entitled to recover this balance, namely, $84,074.34, with interest thereon at the rate of six per cent per annum from date of the payment of the award until paid, together with a “ cancellation allowance ” of *69 $8,500.00, with interest at the rate of six per cent per annum from March 17,1919, until paid. Judgment will be rendered accordingly.
Williams, Judge; LittletoN, Judge; and Booth, Qhief Justice, concur.
SUPPLEMENTAL OPINION ON MOTION FOR NEW TRIAL
GREEN, Judge,
delivered the opinion of the court:
Plaintiff’s motion for new trial is based in part upon an erroneous statement. The court did not hold in the original opinion that plaintiff’s property and contract rights were requisitioned. On the contrary, no such language is found in the opinion. The original opinion did state that the Shipping Board notified the plaintiff that the contracts had been requisitioned, but the other language contained in the notice, and other facts and circumstances which were set out at considerable length in the opinion showed exactly what was done in the transactions between the Government and the plaintiff, and made it evident in the opinion of the court that “there was in fact no property taken.” If the defendant had requisitioned and taken over the contracts of the plaintiff, it would have put itself in the place of plaintiff with reference to these contracts and been obliged to manufacture the machinery for the purchasers in accordance with the terms of the contracts. This is just what the defendant did not do. The contracts of the 'purchasers were requisitioned, and the defendant put. itself in the place of the parties who made the contracts with the plaintiff. All this was not only stated in the notices given plaintiff by defendant, but plaintiff accepted this construction and so treated defendant throughout all the transactions had between them.
The motion for new trial also involves a fundamental error as to what was involved in the case. The matter upon which the case turns is not whether some technical or intangible right of plaintiff was requisitioned. In the opinion of the court, as stated in the former opinion, plaintiff’s right to recover in the case must be determined under the act of *70 June 15,1917, providing that the Government had the right to cancel all or any part of such contracts as are involved herein, and its right to recover must be limited by the rule laid down in Russell Motor Car Co. v. United States, 261 U. S. 514. Counsel for plaintiff call attention to the fact that in the Russell Motor Gar Co. case the contract in question was made after the enactrrient of the 1917 statute referred to above. This is true, but in the case of Brooks-Scanlon Corp. v. United States, 265 U. S. 106, the contract was made prior to the time of the enactment of this statute, but the acts upon which the plaintiff’s claim is based were done under this statute, as they were in the instant case.' The facts in that case differed somewhat from those in the case at bar in that the plaintiff in the Broohs-Scanlon case was the purchaser of the product to be manufactured, and in the case at bar the plaintiff is the manufacturer. By reason of this fact there was a dissenting opinion, but in neither the majority nor minority opinion was any question raised as to the application of the act of June 15, 1917. In fact the act by its express terms authorized the President “to modify, suspend, cancel, or requisition any existing or future contract * * (italics ours) and by its language and under the holding of the Supreme Court applied equally to contracts made before its passage as well as to those made afterwards while the act was in force — at least where the contracts were entered into when the Government was engaged in a war. As to the constitutionality of that portion of the act which made it apply to existing contracts, we have no doubt. No one would contend that the Government could not, under the stress of war, deprive a citizen of his most valuable right — his liberty — press him into its service, expose him to hardship,, danger, suffering, and even death, and yet pay for these acts only what it provided in its laws. If it can do this, it surely can authorize the cancellation of a contract entered into in time of war even though it be made between two citizens prior to the passage of the act authorizing its cancellation and may provide that the parties to such contract shall receive only just compensation for this action. As to what items shall enter into this “just compensation,” we are bound by the decisions of the Supreme *71 Court in the Russell Motor Car Co. case, supra, and the Broohs-Scanlon case, supra, both of which hold that prospective profits constitute no part of “ just compensation ” in such cases. It should also be noted that in the two cases last cited, the Supreme Court appeared to assume that there could be no question but that the act of 1917, above referred to, was constitutional as to contracts made in time of war whether made before or after the passage of the act.
The case of Burns et al., Receivers, v. United States, 66 C. Cls. 142, 146, is cited as being directly in conflict with the decision of the court in the case at bar. This is an error. There is no conflict between the two decisions, and the decision cited has no application to the instant case. In the instant case, the contracts were made in war time and controlled by a statute enacted in war time by virtue of which the Government exercised its war powers; in the Burns case, the contract was made in peace time, all the transactions involved occurred in peace time, and after the war statute which controls the case at bar had been repealed. It was an ordinary case for a breach of contract, governed by the legal principles that prevail in time of peace.
Having determined that the right of plaintiff to recover was controlled by the act of 1917 above referred to, the court in the former opinion turned to the case of Russell Motor Car Co., supra, to ascertain the rule or rules for fixing the amount of plaintiff’s recovery. There is no claim made in argument that the case last cited was not followed by the court in this respect, but it is contended that the decision therein is not controlling. It seems to be thought by plaintiff’s attorneys that there was something in the decision indicating as they state that “ the court did not think ” that the Government had any power to modify a contract between private parties, even in time of war, but the language of the opinion is clearly to the contrary. It was specially contended by plaintiff in the Russell Motor Car Co. case that the statute did not apply to contracts between the Government and private parties, and the court said:
“ We do not mean to deny the power of Congress, in time of war, to authorize the President to modify private con *72 tracts (leaving the parties free, as between themselves, to accept or not), nor do we suggest that Congress has not done so by the present statute.”
The court goes on to say that it does not concede that the power in question is limited to private contracts. The quotation shows that this contention on the part of the plaintiff is without merit. The other objection to the application of the doctrines laid down in the Russell Motor Car Co. case, namely, that two of the contracts were made prior to the enactment of the statute of 1917, we have already shown not to be well founded.
Counsel for plaintiff assert that Finding XV is based on a miscalculation which made the costs and expenses to be allowed on the Standifer contract $31,617.97 less than they should be. There is no miscalculation involved in Finding XV. The calculation made by plaintiff’s counsel is based on the theory that the Standifer contract could be separated into contracts for the specific articles provided for therein, but the Standifer contract was indivisible. Plaintiff’s counsel make their calculation under a theory by which the payments made on the Standifer contract are held to be payments for the articles completed. This is a mistake. The contract specified one price for all the machinery to be constructed under it. • Both the turbines and the pumps were constructed under the contract and included in it, and the payments were made on the contract. With reference to payments, the contract provided—
“ Ten per cent of contract price with signed contract; seventy per cent when shipped; ten per cent thirty days after shipment; ten per cent sixty days after shipment.”
It will be observed that ten per cent on the whole contract price on all the machinery contracted for was paid in advance. The amount of this payment was $73,500 as shown by Finding II. When two pumps were completed under the contract, the Fleet Corporation paid plaintiff $1,700. When a geared marine turbine was completed thereunder, $64,620* was paid in three installments; and when fourteen more pumps were delivered, defendant paid plaintiff $11,900. It *73 may be that defendant paid a greater amount or earlier than was required by the contract, but this did not make these items paj^ments for specific machinery. They were payments on the contract made when the machinery was delivered, and not payments for profits as plaintiff contends. There can be no question but that if the contract had been completed these payments must have been credited on the entire purchase price.
The second paragraph of Finding X, however, may be somewhat ambiguous in the language used with reference tó these payments and to avoid all controversy on this point this paragraph will be stricken out and a paragraph in accordance with the allegations of the petition and the proof will be inserted as follows:
“As alleged in the petition plaintiff completed and delivered to defendant certain of said turbine equipment under the said Standifer contract, and was paid therefor the sum of $78,220 ‘ in accordance with said Standifer contract.’1 This sum was paid in the following manner: The Fleet Corporation paid plaintiff $1,700 on account of two pumps having been completed and delivered to it by plaintiff on the Standifer contract; also paid plaintiff, in three installments, $64,620 on account of a geared marine turbine having been completed and delivered under the Standifer contract; and $11,900 on account of fourteen other pumps having been completed and delivered under the Standifer contract.”
In the former opinion the court held, following the Russell Motor Car Co. case, that:
“ In fixing just compensation the court must consider the value of the contract at the time of its cancellation, * *
Accordingly, in Finding XVI the value was fixed at $8,500. Counsel for plaintiff complain of this figure as insignificant and erroneous, and endeavor to demonstrate this by including under it other matters than that to which the court applied it. In the former opinion the court stated that in fixing this amount prospective profits were not included. Necessarily, outside of such profits, the value of the contracts to plaintiff was quite small and we have no occasion, to change our former finding.
*74 The plaintiff has also filed a motion for Special Findings of Fact under Rule 57. There are many reasons why this motion should not be granted. ' In the first place plaintiff asked for findings of fact when the case was submitted to the commissioner, and in its brief on the submission of the case to the court stated that the commissioner’s findings were in accord with the evidence and, that with change in the amounts in Findings XXXYII and XL and allowance of interest to date of payment, should be adopted by the. court. Rule 57 only applies when special findings of fact are not “ requested at the time the case is submitted.” Plaintiff had already made this request; its findings had been considered and were as to the greater part thereof adopted by the court in the Special Findings of Fact which accompanied the opinion. As the court still retains the same view as to what the findings of fact should be, any further findings of fact (except as to two matters hereinafter stated) would simply be a repetition of those already found and stated. That no purpose would be subserved by such action is apparent.
Many findings asked by plaintiff were omitted by the court but the reason ought to be plain. It is that such findings largely consist of conclusions of law sometimes mingled with matter which in the judgment of the court was entirely irrelevant or immaterial to the case. An examination of the findings requested by plaintiff will show that the principal thing sought is that the court should state in the findings legal conclusions not only that the plaintiff has a claim for just compensation, but the manner in which this computation shall be determined and the-amount thereof. The commissioner made such a finding, and stated therein that just compensation included the amount of profits which the plaintiff would have made on the contracts, which he computed accordingly. But the determination of whether such profits were a part of just compensation in the case at bar is clearly a conclusion of law and has no place in the findings of fact. The court found the amount of such profits, which it included in the Special Findings of Fact, but its conclusion of law that such profits should be excluded from the amount of plain *75 tiff’s recovery was expressed in the opinion and judgment, which is manifestly where it belongs. This was not the only conclusion of law which plaintiff seeks to have incorporated in the Special Findings of Fact, but it would take too much space to recapitulate the others.
In one respect, plaintiff’s motion for Special Findings of Fact will be granted. It is asked that the dates when the contracts were entered into be shown and as these dates are indirectly referred to in the opinion, this request seems to be proper. Accordingly, Finding II will be amended by the addition of the following:
“A copy of the Standifer contract is attached to the petition and marked £ Exhibit B-l ’; copies of the Turbine Equipment-Luckenbach contracts are attached to the petition and marked ‘ Exhibit C-l ’ and £ Exhibit C-3 ’; and a copy of the Supple & Ballin contract is attached to the petition and marked £ Exhibit A-l.’ These contracts are made part of this finding by reference to said exhibits.’*
Also, on the court’s own motion, the order amending the findings will include an amendment to Finding X in manner and form as has been hereinbefore stated.
Plaintiff, having before submission of the case, requested Special Findings of Fact and on the submission presented the same to the court for determination, and the court having made Special Findings of Fact as a basis for its opinion and judgment, the motion for Special Findings of Fact will be overruled except in so far as to amend the Special Findings of Fact heretofore made with respect to the matters specified above, and the motion for new trial will also be overruled. An order will be entered accordingly.
Williams, Judge; LittletoN, Judge; and Booth, Chief Justice, concur.
Whalet, Judge, did not hear this case originally and took no part in this decision.