## ENRIGHT et al. v. UNITED STATES.
### No. E–612.

Court of Claims.

Dec. 7, 1931.

right & Carpenter, of Jersey City, N. J., on the brief), for plaintiffs.

J. Robert Anderson and Isaac V. McPherson, both of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Charles F. Kincheloe, of Washington D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiffs are receivers of the W. & A. Fletcher Company, and as such bring suit to recover the balance which is due that company on overpayments of taxes after deducting certain underpayments thereon. The parties have stipulated that the overpayments on taxes made by the Fletcher Company exceed the underpayments thereon in the sum of $292,671.51, which is due the plaintiffs subject to any counterclaim which the defendant may be able to establish in this suit. The only controversy with reference to the claim set up in the petition is as to whether the plaintiffs are entitled to any interest thereon and if so, how much.

The principal questions in the case are with reference to the counterclaim which defendant has filed herein, which arises out of contracts made by and between the United States Shipping Board Emergency Fleet Corporation and the W. & A. Fletcher Company in 1918 for the manufacture of certain turbines and boilers. The evidence shows that a contract was entered into between the Fletcher Company and the defendant in the first instance for the manufacture of ten steam turbine units at a specified price for each unit. The Fletcher Company completed this contract and was paid therefor at the contract price, with the exception of an amount due for increase in cost of labor thereon amounting to $53,919.89, which is conceded to be a credit to which plaintiffs are entitled.

During the pendency of the contract above referred to, which may for convenience be called the original contract, a supplemental contract was entered into for the construction of ten more turbine units on the same terms. This contract has been referred to in the evidence and argument as supplement No. 1. Thereafter there was a further supplemental contract entered into for twelve additional turbine units on the same terms so far as the contract price is concerned. This contract has been referred to as supplement No. 2.

John M. Enright, of Jersey City, N. J., and George R. Shields and George A. King, both of Washington, D. C. (McDermott, En

Later the Fleet Corporation sent an order to the contractor reinstating certain oil pumps, coolers, and spare parts provided for in supplements 1 and 2. The contractor complied with this order and performed the work required thereby. The defendant settled in full for this order of what has been called the "reinstated items" in the manner shown in finding 8.

In the latter part of 1918 a further contract which was also supplemental was entered into between the Fletcher Company and the defendant, whereby the Fletcher Company agreed to construct twelve boilers at a specified price.

The two supplemental contracts above referred to were suspended or canceled by defendant before completion, and the boiler contract was suspended before any work had been done thereon, but not until after a certain amount of the materials had been purchased and acquired by the Fletcher Company. On each of these contracts the defendant made large advance payments and also progress payments. Defendant now claims that these advance and progress payments largely exceeded the amount which was due the Fletcher Company, and that, after allowing the Fletcher Company all proper credits on account of the cancellation of the contracts, the contractor was justly indebted to the defendant in the sum of $552,332.13, for which, with interest, the defendant asks judgment.

As against this counterclaim plaintiffs contend:

First, that defendant cannot maintain a suit to recover payments made in accordance with the contracts;

Second, if it be held that plaintiffs cannot be allowed anything above just compensation, the burden of proof is upon defendant to show what this just compensation was, and that defendant has failed to sustain this burden;

Third, that in any event just compensation in this case is measured by the proportion of the cost of the work and materials furnished on the contracts, which were not completely performed as compared with the total cost of the work to be done, and that when this ratio is obtained just compensation will be the same proportion of the total contract price. (This contention was presented on reargument of the case.)

With reference to the contention made on behalf of plaintiffs that defendant cannot in any event recover any of the advance and progress payments made pursuant to the contracts, we do not think that this contention merits extensive discussion. The argument on behalf of plaintiffs is based in part on the fact that the notices which terminated further operations on the contracts do not use the word "cancel" or "cancellation" with reference to the contracts, but simply notified the contractor "to suspend all work and hold up all commitments." From this fact it is contended that the contracts were not in fact canceled. But this action was utterly at variance with the contracts which were not for certain turbines or turbines partially completed, which was the condition of the work when the contracts were terminated. The contracts were indivisible. When the defendant terminated the contracts and refused to allow plaintiffs to go any further with the work and to recognize any commitments that the contractor should thereafter make for material, it in effect canceled the contracts and was ignoring their provisions with reference to the completion of the work for which it had made the contracts. The evidence shows very clearly that all this was fully understood by the parties. It is true that the word "suspend" sometimes means to "cease temporarily," but the notices also called for a statement under oath with reference to progress condition, materials used, and commitments made, and the subsequent conduct of the parties showed clearly that neither party expected any of the work to go on further unless further arrangements were made. The notices were sent out under the statute in force at the time, which gave the government the right to cancel or suspend the contracts and provided that in such event the contractor should receive just compensation. Authorities are hardly necessary to show that if the contractor received anything above just compensation, then under the provisions of the statute the defendant is entitled to recover back the amount thereof. But see United States v. Skinner & Eddy Corp. (C. C. A.) 35 F.(2d) 889, and United States v. U. S. Fidelity Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696.

In the supplemental contracts there was a provision making the provisions of the original contract a part thereof, and in this connection it becomes necessary to consider a paragraph in the original contract as follows:

"The contractor agrees that in the event the advance of one hundred and eighty-two thousand dollars ($182,000) provided for herein, under subdivision (a) of section 2 of this article, has not been completely repaid upon the date of the final completion and de-

livery of the units contracted for herein, or when the date of the forfeiture or cancellation of this contract, as hereinbefore provided, then in such events, the contractor shall repay, in cash, any balance of the advance payment of one hundred and eighty-two thousand dollars ($182,000) remaining unpaid, as aforesaid, within thirty (30) days from the date of the final completion and delivery of the units contracted for herein, or from the date of the forfeiture or cancellation of this contract, as the case may be."

Plaintiffs ignore this provision, and we think it must be conceded that it is difficult to give the words used such a construction that it will be consistent with itself or consistent with other parts of the contracts, or even consistent with what we must conclude was the intention of the parties, taking into consideration all of the circumstances of the case. It will be observed that this provision requires that the contractor shall repay any balance of the advance payment not repaid when the contract is completed or when it is canceled, within thirty days. But advance payments are not a loan. They are payments of sums that are expected to become due on the contract, and in the ordinary course of events do become due and are applied accordingly. Incidentally it may be said that there is one clause in this paragraph that does not even make sense. It is quite evident that the parties did not intend to have this paragraph of the contract literally enforced. Counsel for defendant, in making the computation of the amount due on the counterclaim, treat this part of the contract as though it were a provision that any excess of the advance and progress payments above any offsets that the contractor held when the contracts were canceled should be repaid to the defendant. But this is not what the contract says. Probably the party who drew it intended that the excess of the advance payments over the amount due from the defendant on the contract should be refunded. But the amount to which plaintiffs are entitled is controlled by the statute, and we cannot disregard the provisions of the statute unless the contract clearly and definitely provides for a settlement on some other basis, which it does not. In fact, the defendant has always conceded that the plaintiffs were entitled to just compensation, although it has never been willing to allow the plaintiffs the sum which would be an equivalent thereof in our opinion. We think, however, we can gather from the provision under consideration the intent of the parties to a cer-

tain extent. Under all of the circumstances, we conclude that the provision expresses the intent of the parties that the advance payments were not conclusive of the amount due from defendant to plaintiffs and were subject to future contingencies. Also that if it should be found that any portion thereof ought to be repaid, this portion would become due within thirty days after the cancellation of the contract.

As we have stated above, this provision was in the original contract. Both of the supplemental contracts contain the following provision: "This contract, it is expressly agreed, is supplemental to said contract of March 2, 1918, and said contract of March 2, 1918, is by reference made a part hereof, and all the terms, conditions, and provisions thereof (unless specifically modified herein)[1] are to apply hereto and are made a part hereof the same as though they were expressly rewritten and incorporated and included herein."

Here again the construction is complicated by the fact that the advance payments were different in each of the supplemental contracts from the amount of the advance payment which it is specified should be repaid by the provision in the original contract. But we think it can be said that this provision last quoted applied to the advance payment on the respective supplemental contracts.

With reference to the remaining contentions made on behalf of plaintiffs, we think the logical order would be to take up first the one last made, which is in effect that in determining the state of the account between plaintiffs and defendant after the cancellation of the contracts plaintiffs should be allowed such a proportion of the contract price as the cost of the work and materials furnished bore to what would have been the total cost thereof if the contracts had been fully completed; and many cases are cited in support of this contention.

Counsel for defendant answer this proposition by saying that the contract is indivisible. This is true, but that fact is not always controlling where the contract is terminated by the party for whom it is to be performed. On the other hand, we think that the cases cited on behalf of plaintiffs are not directly in point. In nearly all of them the contract was terminated through some fault on the part of the defendant. If it be said that the

[1] The words in parenthesis are contained only in supplement No. 2.

rule contended for by plaintiffs is also applied in cases where full performance is prevented by some excusable impossibility, or where the contract was terminated by common consent, still we do not have the same situation as that which exists in the present case. Here the contracts were not terminated through any fault on the part of the defendant or impossibility of performance. The defendant had the right to cancel the contracts under the statute, and was merely exercising this right, and we think we must look to the decision of the Supreme Court in the case of Russell Co. v. United States, 261 U. S. 514, 43 S. Ct. 428, 67 L. Ed. 778, to determine the method by which the amount of just compensation shall be ascertained. It is true that in that case the Supreme Court did not undertake to lay down any comprehensive rule or principle by which just compensation might be ascertained in cases like the one at bar, but it did approve the method used when the Russell Co. Case was decided by this court. The decision of the Supreme Court in the Russell Co. Case did not necessarily preclude any other method of ascertaining "just compensation," but there is no hint contained in the opinion that any other method can be used. In applying the method contended for by plaintiffs, it is necessary to assume that the contract is still in force to such an extent that the value of the work done and materials furnished may be computed on the basis of the total contract price. Here, as we think, the contracts were entirely abrogated, leaving nothing to be done under them, consequently "just compensation" was required to be made under the statute. It is contended by plaintiffs that the contracts were merely suspended and not canceled. The word "suspend" was used in the notices; but, as before stated, the contracts were not divisible and suspension thereof was virtually the same as cancellation.

It may be said that in the Russell Co. Case the issue was simply whether anticipated profits might be included in just compensation, but this was not the only subject of contention. The real question was how just compensation should be determined in the case. It may be said also that in the Russell Co. Case there was no attempt to apply the rule of earned proportion for which plaintiffs now contend and no finding of fact as to the amount thereof. But the earned proportion could have been computed from the findings of fact in the same manner that plaintiffs seek to have it computed in this case. On the whole, we think we are precluded by the opinion in the Russell Co. Case from applying any other method for determining just compensation than is stated therein.

The remaining contention on behalf of plaintiffs is that in the instant case the burden of proof is on the defendant to show the amount of just compensation, and if just compensation is not to be ascertained in the manner for which plaintiffs contend the proof fails to show the amount thereof. Counsel for defendant have assumed that the burden was on the plaintiffs to establish the amount of just compensation. We do not think this is correct. The plaintiffs do not bring this suit on the contracts, nor do they seek to recover any judgment for just compensation on account of the cancellation thereof. If it should be determined that just compensation amounted to more than the advance and progress payments, no judgment could be rendered in favor of plaintiffs for the excess. The defendant is suing upon a counterclaim. Its allegations are in effect that the contractor and its successors, the receivers, are unlawfully withholding from it money which plaintiffs are not entitled to retain. But the money which defendant seeks to have paid back was lawfully acquired by the contractor, being paid to it pursuant to the terms of the contracts. In the absence of any evidence on the subject, it is clear that we would be obliged to hold that plaintiffs could retain it. The burden of proof is upon the defendant to show that the plaintiffs have no right to retain this fund and that in fact it belongs to defendant. The contracts under which the money was paid have, it is true, been canceled. But it does not follow from this fact alone that the contractor and its successors are not entitled to retain it, nor, as we think, does this state of affairs in any way shift the burden of proof.

Having determined that the burden of proof on this point is upon the defendant, we come to a consideration of whether the defendant has sustained this burden or whether on the other hand the evidence is so indefinite and uncertain as to be insufficient for the court to make the findings of fact which are necessary in order that it may determine the amount of just compensation to which the plaintiffs are entitled.

On this point it must be said that the evidence is certainly not as definite as it might have been and in some respects is conflicting, difficult to follow, and involving elaborate calculations and computations. Possibly this indefiniteness results from the fact that nei-

ther of the parties assumed the burden of proof in the case, otherwise the testimony would probably have been more definite and certain. At all events, the complicated and conflicting evidence which was introduced makes the question now to be determined a very difficult one, but we think on the whole that there is sufficient evidence to enable the court to make the necessary findings.

In the Russell Co. Case the contractor was allowed the amount expended for material and labor in the performance of the contract together with all expenses incurred in connection therewith and given an additional allowance, the amount of which was not stated, to cover possible contingencies not included in the itemization (see finding of fact XIV made by the Court of Claims in Russell Motor Car Co. v. United States, 57 Ct. Cl. 464, 476), and the question arises as to whether the evidence in the instant case shows all of these expenses and the necessary facts from which the court can determine how much the additional allowance should be in order that the plaintiffs may receive just compensation.

██ We think it does. The direct cost and expenses are fully shown. The amount of the overhead can be computed using the same percentage that the parties applied in computing the progress payments. The loss on additional facilities as a result of the cancellation of the contracts can be determined. The most doubtful matter is the amount of the loss or damage sustained by the contractor by reason of the stoppage of the work on the contracts. The testimony of the former secretary of the contractor shows that the operations of the Fletcher plant were greatly disorganized and that the concern had not since been able to make full use of its facilities, and that there was no use for an extension built for the purpose of performing the contracts, but there is no direct testimony as to the amount of the loss or damage thus sustained or of any facts from which it may be mathematically computed. It does not follow, however, that the court may not determine it in the same manner as it may make a determination of the value of the contracts and of what might be called for want of a better term a "cancellation allowance." These matters are determined from all of the circumstances of the case if the facts in relation thereto have been substantially developed by the evidence. The rule of evidence to be applied is somewhat analogous to that in a personal suit for damages incurred through physical injury in which, if the case is tried by a court without a jury and the de-

fendant found liable, the amount of damages to be awarded is such a sum as in the judgment of the court will fairly compensate the plaintiff for the injury received. Proceeding in this manner, we have determined that the plaintiffs should be allowed in addition to the contractor's direct cost and expenses as a part of just compensation the sum of $50,000 (finding 13), which includes all of the matters to which reference has above been made. Later on it will appear when a balance is struck that a large sum became due to defendant from the contractor when the contracts were canceled, and consequently no allowance of interest can be made to plaintiffs as a result of the cancellation. In estimating the value of the contracts, we have considered the loss or damage sustained by disorganization of the operations of the plant through stoppage of the work as in some respects a separate matter but one that must be considered in determining the value of the contracts to the contractor, and have therefore put the allowance for both matters in one sum. As counsel for both sides have referred to the case of De Laval Steam Turbine Co. v. United States, 70 Ct. Cl. 51, in this connection, it will be observed that in the De Laval Case, which was quite similar to the one now under consideration, $30,000 was allowed for disorganization of the plant operations. In determining the value of the contracts there were two facts which, among other things, needed to be specially noted. The first was that these contracts were subject to cancellation at any time, and the second, that the Fletcher Company had received large sums in the way of advance payments and in addition thereto progress payments as the work proceeded, so that the proportion of the contract price paid greatly exceeded the proportion of the work done. This so complicated the situation that no one would have paid anything for an assignment of the contracts under the circumstances existing at the time of cancellation. But it does not follow that the contracts were worth nothing to the contractor. When a cancellation was made the Fletcher Company was chargeable with the full amount of the advance and progress payments which, including those made on the boilers, and not including payments made on the reinstated items, amounted to over $622,000, and the contractor was left without an opportunity to work this out under the contracts. On the other hand, the plaintiffs can receive nothing on account of anticipated profits.

The findings show plaintiffs' indebtedness to defendant and defendant's indebtedness to

plaintiffs in connection with defendant's counterclaim to be as follows:

A. Plaintiffs' indebtedness to defendant:
a. Advance and progress payments on turbines (Finding 13) ............ [1]$562,254 64
b. Advance payment—boilers (Finding 10) ............................ [1]60,000 00
c. Schutte & Koerting material purchased by defendant for Fletcher account (Finding 13).......... [1]4,030 03
d. Balance of cancellation claim (Worthington Pump Co.) assumed by defendant (Finding 13)........ 8.161 48

Total ......................... $634,446 15

B. Defendant's indebtedness to plaintiffs:
a. Net total expenditures for material and labor in the performance of the two supplemental contracts and other items of direct cost and expense incurred thereon (less a credit to defendant for the salvage value of materials not used) for which plaintiffs are entitled to credit (Finding 13).............. $106,066 87
b. Cost of direct labor and material on boilers (Finding 11)............... 18,375 84
c. Other items of cost and expense incurred by reason of the cancellation of the boiler contract, not included in the preceding items (Finding 11) ...................... 2,000 00
d. Just compensation for cancellation of contracts in addition to above items (Finding 13)................. 50,000 00
e. Excess wage on completed turbines as agreed (Finding 3).............. [1]53,919 89
f. For repairs to sundry vessels and collision damage as agreed (Finding 13) ............................. [1]14,972 09

Total ......................... $245,334 69

Balance due from plaintiffs to defendant on counterclaim ......................... $389,111 46

[1] Conceded by opposite party.

In the above statement all debits and credits relating to the reinstated items specified in finding 8 are omitted as having been settled as shown in said finding.

The statement of account shows that there was due the defendant on its counterclaim a balance of $389,111.46 which is accordingly allowed the defendant together with interest as hereinafter set forth.

We doubt whether a more tangled web of accounts was ever presented to a court. Counsel for the respective parties have submitted computations claimed to have been made from the evidence, which differ by more than half a million dollars. The records have been carefully gone over by auditors, but the entire lack of evidence on some matters and the indefinite and conflicting nature of it upon others has "made confusion worse confounded" and the final conclusion more a matter of determination on what was shown by the evidence than the auditing of books scientifically kept. As an example of this confusion, we might mention the so-called "sworn statement" of the contractor made in response to a request by the Shipping Board upon which defendant places much reliance. This statement contains so many palpable errors that we are compelled to disregard it as to items both for and against the contractor, except where established by other evidence. While counsel on both sides have presented computations and many pages of argument with reference to the so-called "reinstated" items, we have disregarded these items entirely in making up the account. The parties themselves had removed them entirely from the contracts by making a new and distinct contract with relation thereto, and this new contract was fully settled by them. The manner of settlement is shown (so far as disclosed by the evidence) in the report of the auditor and commissioner before whom both parties appeared by attorneys and were heard. In the argument made by counsel for defendant a statement is made of the account between plaintiffs and defendant in which plaintiffs are charged with $1,642.04 on account of a cash payment made to a subcontractor in this settlement for the reinstated items. In consequence of the burden being upon the defendant to establish the amount due under the counterclaim, we have, as a result of the condition of the evidence, been compelled to allow plaintiffs with reference to some items which have not been satisfactorily proved the largest amount to which the plaintiffs could in any event be entitled, and for the same reason we have not given defendant any credit on account of this transaction for lack of proof. One other matter needs to be explained lest it should be thought there was an inconsistency between the findings as to the amount of material and work furnished by the contractor and the findings with reference to progress payments. It may appear strange that the amount of progress payments on the turbines is $280,238.40 (finding 13) while the amount of work and material furnished by the contractor on the canceled turbine contracts with some additions for small items is found to be only $106,066.87, in the above statement of account. This apparent discrepancy is explained by the fact that material to the amount of $196,884.17 in the Falk Company account and Worthington Pump Company account was subsequently settled for by defendant. While there is no direct evidence on the subject, we infer that in estimating the progress payments the value of these materials was included, as we can find no other way in which the amount thereof could have been reached. It should also be noticed in this connection that under the contracts

the progress payments included a proportion of the profit to be earned.

Having determined that the amount due the defendant by the W. & A. Fletcher Company and its receivers is $389,111.46, after allowing it just compensation to which it was entitled upon the cancellation of the contracts, the only matters remaining for determination are the plaintiffs' claim for interest on the net overpayment of tax amounting to $292.671.51 and the defendant's claim for interest upon the amount due it by the plaintiffs. It is agreed by all that the Fletcher Company overpaid its taxes for the years 1917, 1918, 1920, and 1921, and that, after a credit against these overpayments of additional taxes due for 1916 and 1919, there remained a net overpayment of $292,671.51, which is a proper offset against the amount of $389,111.46 due the defendant by the corporation and its receivers, leaving a net amount due the defendant on account of advances by the defendant and other items set forth in the findings of $96,439.95. The Commissioner of Internal Revenue determined and allowed the overpayments of taxes in January and November, 1923, under the provisions of the Revenue Act of 1921. There is no evidence in the record that the Fletcher Company filed any claim or claims for refund, or that any portion of the amount was paid under protest or pursuant to an additional assessment. No interest may therefore be allowed on the overpayment of the tax in question to the date of the allowance under section 1324 (a) of the Revenue Act of 1921, 42 Stat. 227, 316. Nor may interest be allowed under the provisions of the Act of March 3, 1875, 18 Stat. 481 (31 USCA § 227), upon the withholding by the defendant of the payment of the refund, inasmuch as the Fletcher Company was at that time indebted to the defendant for an amount in excess of the overpayment allowed.

With reference to defendant's claim for interest, it appears that the total of advance and progress payments made by the defendant to the Fletcher Company on the three turbine contracts which were canceled January 7, March 12, and April 14, 1919, was $562,254.64, not including payments on reinstated parts; that the advance payment made by the defendant on the contract for boilers, which was canceled January 27, 1919, was $60,000; and that these amounts plus certain other items set forth in finding 13 total $634,446.15, for which the Fletcher Company became indebted to the defendant upon the cancellation of the contracts in question. The contracts provided that the indebtedness of the contractor to the defendant should become due in thirty days from the date of cancellation. After allowing as an offset against this indebtedness the total amount due the plaintiffs by the defendant, including just compensation for the cancellation of the contracts, there remained due the defendant $389,111.46, as hereinbefore set forth. The contracts involved were all canceled within a period of about three months. The record in this case does not enable the court to determine with any degree of accuracy the amount due the defendant by the plaintiffs after the allowance of all proper credits and offsets and just compensation upon each of the canceled contracts for the purpose of computing interest upon such amounts from the thirtieth day after the cancellation of each of the contracts; we therefore fix February 25, 1919, to equate the dates of cancellation for the purpose of computing interest which accrued in favor of the defendant thirty days thereafter, on March 27, 1919.

After applying the various overpayments of tax made prior to June 15, 1922, against the net balance of $389,111.46 due the defendant from March 27, 1919, to June 15, 1922, the date of the last overpayment of tax, the interest at 6 per cent. on the excess from the appropriate dates to June 15, 1922, amounts to $53,169.81. After deducting from the principal amount of $389,111.46 found by the court to be due the defendant by plaintiffs on the counterclaim the total net tax overpayment of $292,671.-51, there remains a net balance due the defendant of $96,439.95 on which interest at 6 per cent. from June 15, 1922, to December 7, 1931, the date of the judgment herein, amounts to $54,842.21. The total interest due the defendant by the plaintiffs is therefore $108,012.02.

Judgment will be entered in favor of the defendant for $96,439.95, together with interest of $108,012.02 to the date of judgment, amounting in the aggregate to $204,451.97. It is so ordered.