LittletoN, Judge,
delivered the opinion of the court:
Plaintiff’s claim must be denied for lack of sufficient proof to establish the damages, if any, sustained by it by reason *232 of the cancellation on December 12,1918, of contract 5260-B. After this contract was entered into the plaintiff purchased certain materials to be used in the manufacture of cloth called for by this contract. It submitted to the defendant’s authorized officer three samples of cloth, the acceptance of which was necessary under the contract before plaintiff could proceed with its manufacturing operations. The defendant’s representative in charge of the contract held that none of the samples submitted fulfilled the requirements of the contract and specifications, and no cloth was manufactured by plaintiff under this contract before it was canceled. During the time plaintiff was endeavoring to submit to the defendant a sample which would be acceptable to it, the plaintiff, upon authority granted by the defendant, used the materials purchased and on hand for the purpose of contract 5260-B in the manufacture of cloth being delivered under a prior contract, 586-B.
Prior to cancellation of contract 5260-B plaintiff had an undisclosed quantity of khaki yam in its looms. Arrangements had been made by plaintiff to purchase the necessary filling to be used with the khaki yam but the manufacture and shipment of such filling yam was awaiting acceptance by the defendant of a sample of the cloth to be manufactured, and when the contract was canceled plaintiff canceled its order for the filling yarn. The evidence does not show the amount, if any, of filling yarn that plaintiff purchased or had on hand at date of cancellation of the contract which had been acquired for use thereon. When the contract was canceled a quantity of khaki yarn, which plaintiff had on hand and intended for use on contracts 586-B and 5260-B, was returned to the manufacturer. A large portion of such yarn on hand was used in completing contract 586-B between the date of the making of contract 5260-B and the completion of contract 586-B on February 14, 1919.
The evidence does not establish with any degree of certainty the amount of yarn acquired for use on contract 5260-B and on hand when that contract was canceled, or on February 14, 1919, when contract 586-B was completed, in the fulfillment of which material purchased for use on con *233 tract 5260-B was used. Such materials remaining on hand after completion of contract 586-B did not exceed, at the most, 1,303 pounds. The evidence does not show the cost or value of any yarn, on hand and applicable "to contract 5260-B at December 12, 1918, or February 14, 1919. After contract 5260-B was canceled, the plaintiff during 1919 purchased a large amount of additional warp and filling which it used in manufacturing 37,258 yards of commercial cloth at a total cost, which included material, manufacturing, and labor costs, of $147,529.15; such commercial cloth was sold for a total of $90,937.41, or $56,591.74 less than the claimed manufacturing cost. Plaintiff therefore claims as its loss the difference between $145,306.20, the contract price at $3.90 a yard, stated in contract 5260-B, for 37,258 yards of cloth, and $90,937.41 received for the cloth, which plaintiff manufactured and sold during 1919, or $54,368.79. This claimed loss is not supported by the evidence. Assuming, without deciding, that contract 5260-B was canceled without having been breached by plaintiff, the proper measure of compensation to which plaintiff was entitled, if any, was the fair market value of contract 5260-B on December 12, 1918, and the difference between the cost of the materials acquired specifically for use on contract 5260-B and the fair market value of such materials on the date the contract was canceled. Russell Motor Car Co. v. United States, 261 U. S. 514; De Laval Steam Turbine Co. v. United States, 70 C. Cls. 51, affirmed 284 U. S. 61; Wheeling Steel Corp. v. United States, 71 C. Cls. 571, 574. Neither the amount of such jnaterials nor any other factor has been shown. Plaintiff is therefore not entitled to recover, and the petition is dismissed.
The defendant’s counterclaim for $46,298.48 fails to find support in the record. This counterclaim is based upon the contention that cloth in the amount of 19,013% yards, delivered and paid for under contracts 586-B and 861-B at the highest rate per yard provided in the contract, was rejected for the reason that such cloth did not comply with the contract and specifications and was later sold by the defendant *234 for plaintiff’s account for $46,298.48 less than what the defendant had previously paid plaintiff therefor.
This counterclaim must be denied for the reasons, first, that in the ultimate outcome of the matter relating to the Baltimore cloth, the defendant did not finally reject and refuse to accept the cloth; after it had been returned to plaintiff’s plant from Baltimore for weighing and complete inspection, in view of the fact that an examination of the samples thereof had shown such cloth to be “seconds”, because light in weight and deficient in quality, plaintiff was instructed by the defendant to reship the cloth to it at the Boston Army Supply Base, which was done early in December 1919, and the defendant thereafter kept and retained the cloth as its own. Subsequently, on September 4, 1924, the defendant advertised and sold the cloth as its property, along with a very large quantity of similar cloth, at $1,125 a yard as surplus property of the War Department. Second, that the contract under which the cloth was delivered provided that “It is hereby agreed and understood that any goods which may be rejected on this contract may be purchased by the Government at a reduction in price to be agreed upon and determined upon by the Government and the contractor, and, if so purchased, that these goods shall then apply as deliveries against the contract; and it is further understood that the Government shall be offered these rejected goods before the goods can be disposed of elsewhere.” Plaintiff was not free to sell the cloth to anyone other than the defendant until the latter had finally refused to take it, and this the defendant never did. The defendant established three grades of “seconds” for cloth made and offered under plaintiff’s contracts: For “A” seconds, a deduction of 5 percent was made by the Government from the contract price for cloth not strictly conforming to specifications ; for “B” seconds, a deduction of 10 percent was made; and for “C” seconds, a, deduction of 15 percent was made. Had plaintiff been free to dispose of the cloth returned from the Baltimore depot in September 1918 it could doubtless have been readily sold with little or no loss as there was a good market for such cloth at that time.
*235 The record justifies the conclusion that the rejection of the 19,013% yards of cloth at the Baltimore depot, as not conforming to specification, and the return thereof to plaintiff’s plant, was not intended as a final rejection or refusal to take the cloth, but was for the purpose of enabling the defendant to weigh and inspect such cloth' at plaintiff’s plant, along with other cloth at the mill, in the presence of plaintiff’s officers, thereby establishing to a greater degree of certainty that cloth not conforming to specification was being offered by plaintiff and paid for by the Government at the maximum contract price. In his report of a personal examination and inspection on October 16, 1918, of ten samples taken from the rejected Baltimore lot, the Boston Depot Quartermaster, who was the defendant’s authorized representative in charge of plaintiff’s contracts, classified one of the samples as “A” seconds, five as “B” seconds, two as “C” seconds, and two as unmerchantable. The purpose of the return of the entire lot to plaintiff’s plant is disclosed in this officer’s statement in his report in which he stated that “the Baltimore depot has been requested to return the balance of this merchandise which has been rejected, as a personal examination of these pieces at the mill is the best way of proving the guilt of this concern.” No cloth manufactured by plaintiff under its contracts with defendant was rejected outright by the latter. All cloth was finally accepted and paid for, either at the contract price or as seconds.
With the exception of a letter of April 7, 1919, from the Boston Depot Quartermaster to the plaintiff asking a refund of the entire amount paid for the Baltimore cloth, no claim against plaintiff was ever made or pressed by the War Department in respect of such cloth. After this cloth had been rejected as not complying with the contract specifications and returned to plaintiff’s plant from Baltimore, and with full knowledge of such action, the defendant continued to make payments to plaintiff for cloth delivered under the same contract, such payments totaling $258,234.81. During this time no demand for credit or deduction was made for the goods returned from Baltimore. The amount *236 paid to plaintiff by the defendant for cloth delivered under its contract, after the Baltimore cloth had been reshipped to the defendant at the Boston Army Supply Base, was $46,442.89, and during that time no claim or demand for credit or deduction, on account of the Baltimore cloth returned to plaintiff from Baltimore and later shipped to the defendant at Boston, was made. When plaintiff received the letter of April 7,1919, asking that the amount paid for the Baltimore goods be refunded, it took the position that the amount of $27,055.05, determined and paid on December 30, 1918, in the civil suit in the U. S. District Court, satisfied any obligation of the plaintiff to the defendant in respect of cloth delivered and theretofore found not to comply with the contract specifications. Plaintiff also took the matter up with the U. S. District Attorney for Connecticut, who wrote the zone supply officer and the quartermaster at Boston and, after referring to both the civil and criminal cases mentioned in the findings, stated that “Both the criminal and civil phases have been settled and there remains nothing further to be done in the premises.” This was the view which the War Department evidently took of the matter, for the request for refund made by the Boston Depot Quartermaster was not further pressed. The condition and character of the Baltimore goods, made the basis of the counterclaim, were fully known to the defendant’s officers at the time the civil proceedings against plaintiff were had in respect of imperfect and underweight cloth delivered and paid for under plaintiff’s contracts. There is no satisfactory or convincing evidence that the Baltimore cloth was not taken into consideration in arriving at the amount recovered in such civil proceeding.
The defendant is not entitled to recover and its counterclaim is dismissed.
Whaley, Judge; Williams, Judge; GreeN, Judge; and Booth, Ohief Justice, concur.